Adams and another vs. Rodman and others.

ADAMS and another, Appellants, vs. RODMAN and others, Respondents.

*February 25 — March 14, 1899.*

*Wills: Attestation in presence of testator: Evidence: Special verdict: Immaterial errors: Practice after rendition of advisory verdict: Findings and judgment.*

1. Claimed in a will contest that two of three subscribing witnesses signed the attestation clause in the absence of the testator at the residence of one of such two, such one being a lawyer of large experience and the personal friend and confidential adviser of the testator. Such lawyer witness was dead at the time of the trial, and the other two supported the claim of the contestants. The

Adams and another vs. Rodman and others.

finding on that and other evidence was that only one witness signed in the presence of the testator. *Held*, on appeal, that the presumption as to the truth of the attestation clause, arising from the professional character of the deceased witness and his relations to the decedent, was not sufficient to warrant holding that the decision of the trial court was against the clear preponderance of the evidence. WINSLOW, J., dissents.

2. The rejection of evidence to prove a fact established beyond controversy in the case is not reversible error.

3. The statement of several propositions in the conjunctive, in the question of a special verdict, only one of which propositions is in controversy, where the court directs the jury to answer yes or no to the question according as they shall find on the disputed proposition, is not prejudicial error.

4. In a case tried by the court, the verdict of a jury, if taken, being only advisory, errors in the submission of questions or instructions given by the court in regard thereto, to the jury, are not necessarily prejudicial error.

5. Where a cause is tried by the court and a jury is impaneled for the purposes of an advisory verdict, and the cause is fully tried and submitted, neither party is entitled to a hearing as a matter of right after the coming in of the special verdict and before the findings by the court are filed. [WINSLOW, J., is of the opinion that after the rendition of such a verdict an opportunity should be given for a hearing and for the defeated party to move for findings and judgment notwithstanding the verdict.]

6. Upon the filing of a decision and order for judgment in an equity case, in or out of term, judgment may be entered accordingly without any further proceedings in the cause.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Walworth county: W. F. BAILEY, Judge. *Affirmed.*

A will contest. There were three witnesses to the will. The formal parts of the execution and attestation were perfect, but it was contended that the instrument was put in form by one Silas W. Menzie at the law office of himself and father, and there signed by said Menzie and the testator, and that it was then taken by one Whalen to the residence of the elder Menzie for examination, where it was approved by him, and then by him and said Whalen signed as wit-

nesses in the absence of the testator. The controversy was as to whether either Whalen or the elder Menzie signed the will in the presence of the testator. On that question the county court found in the negative and refused to admit the will to probate. An appeal was taken to the circuit court, where the controverted issue of fact was submitted to a jury, resulting in a finding the same as the decision of the county court. After the verdict of the jury was received, and without any further opportunity for the proponents to be heard, the presiding judge filed his findings of fact, wherein he adopted the verdict of the jury and directed judgment accordingly. The question submitted to the jury was as follows: Did Robert L. Rodman, in his lifetime, execute the paper writing propounded as his last will and testament, and did the witnesses whose names are thereto subscribed attest and subscribe the same in the presence of said Rodman, and were they competent at the time they so subscribed their names thereto? The court, at the foot of the findings, directed judgment to be rendered against the proponents of the will, and judgment was rendered accordingly, from which this appeal was taken.

For the appellants there was a brief by *Cooper, Simmons & Nelson,* attorneys for *Winfield Rodman,* and *J. V. Quarles,* of counsel, and oral argument by *John B. Simmons.* They contended, *inter alia,* that the attestation clause is very full, complete, and formal, reciting all the details of a valid execution. Such an attestation clause, especially when signed by witnesses having knowledge upon the subject, raises an almost conclusive presumption of due execution and entitles the will to probate, in the absence of recollection by the subscribing witnesses, and even against their positive contradictory testimony. *Will of Jenkins,* 43 Wis. 610; *Will of Meurer,* 44 Wis. 392; *In re Lewis's Will,* 51 Wis. 101; *Will of O'Hagan,* 73 Wis. 78; *Loughney v. Loughney,* 87 Wis. 92; *Theological Seminary v. Calhoun,* 25 N. Y. 422; *Tarrant v.*

*Ware*, 25 N. Y. 425; *Will of Cottrell*, 95 N. Y. 330; *Will of Hesdna*, 119 N. Y. 615; *Will of Pepoon*, 91 N. Y. 255; *Rugg v. Rugg*, 83 N. Y. 592; *In re Bernsee's Will*, 141 N. Y. 389; *Peck v. Cary*, 27 N. Y. 1, 30–32; *Gable v. Rauch*, 50 S. C. 95; *Stockwell's Will*, 17 Misc. (N. Y.), 108; *Brissell's Will*, 16 App. Div. 137; *Carey's Will*, 14 Misc. (N. Y.), 486, 71 N. Y. St. Rep. 593; *Gwin v. Gwin*, 48 Pac. Rep. 295; *In re Stacey*, 6 Ohio Dec. 499; *Carey's Will*, 24 App. Div. 531; *In re Coleman's Estate*, 185 Pa. St. 437.

*D. B. Barnes*, attorney, and *Malcolm G. Jeffris*, of counsel, for the respondents, to the point that the due execution of a will cannot be presumed, in opposition to positive testimony, merely upon the ground that the attestation clause is in due form and states that all things were done which are required to be done to make the instrument valid as a will, cited *Lewis v. Lewis*, 11 N. Y. 220–224.

MARSHALL, J. The sole question that requires consideration on this appeal is, Does the evidence clearly preponderate against the finding of the trial court that neither the witness James Whalen nor the witness R. R. Menzie attested the execution of Rodman's will in his presence? Substantially all the direct evidence supports that finding. Three witnesses signed the attesting clause. One, R. R. Menzie, died before the will was presented for probate. The two surviving witnesses both testified to the effect that neither the deceased Menzie nor the witness Whalen signed in the presence of the testator. There were some circumstances corroborating such evidence, and the case thus made on behalf of the contestants was opposed by the presumption that arises from the attesting clause itself and the probabilities of its truthfulness growing out of the fact that the deceased Menzie was a lawyer of large experience in his profession and would not have been likely to have signed a false attesting clause, especially to an important instrument which

would be defeated by the falsehood. The case on the part of the contestants was also opposed by some other circumstances. We do not deem it necessary to go into detail and state particularly all the evidence and all the circumstances upon each side of the controversy. We have called attention to the most material portions of it. The jury heard the witnesses and passed upon their credibility with much better opportunity for determining the truthfulness of their testimony than this court possesses. The circuit judge adopted the conclusions of the jury, presumably upon a careful consideration of the evidence, and we are unable to say that such conclusion is wrong in the light of the rule governing the subject in this court.

True, as counsel for appellants contend, the fact that the attesting clause states that the witnesses signed the instrument in the presence of the testator raises a strong presumption that they did so sign, and such presumption should prevail unless overcome by clear and satisfactory evidence. True, also, the fact that R. R. Menzie was a lawyer of large experience in his profession is a strong circumstance in support of the truth of the attesting clause signed by him. If there were any indication in the record that the law in that regard was not in the mind of the learned circuit judge and was not applied by him and by the jury to the evidence, that would go a long way to enable us to say that the conclusion arrived at is wrong; but no such indication exists. On the contrary the learned circuit judge instructed the jury very clearly and fully that the legal presumption was in favor of the truthfulness of the attesting clause. He instructed them as to the importance of the law in that regard for the due protection of the testamentary right. He stated to the jury that very clear and satisfactory evidence was required to overcome the legal presumption referred to, and he called their attention particularly to the fact that a finding that R. R. Menzie did not attest the will in the presence

of the testator would convict him of stating over his signature what he must have known was a falsehood. All the reasons which appellants principally urge upon this court in support of the theory that the attesting clause is true were called to the attention of the jury by the trial judge, and they found that it was untrue both as to R. R. Menzie and James Whalen, and the presiding judge also so found, and such finding appears to be in harmony with the decision of the county judge who first passed upon the question. In view of all these facts and the record as we find it, we are unable to come to the conclusion that the fact passed upon by the jury and found by the court, as to the witnesses of the will, was found wrong and is contrary to the clear preponderance of the evidence.

Many questions are discussed in the brief of counsel for appellant, which are not material to this appeal, yet we will briefly notice some of them

Some wills drawn or copied by Silas W. Menzie before the date of the will in question were received in evidence, and it was established beyond reasonable controversy by such evidence and other evidence, particularly by the fact that he had been engaged in the profession of the law for some fifteen years before the date of the Rodman will, that he knew the manner in which a will should be executed. In that situation, other wills were offered, drawn by the witness or copied by him after the date of the Rodman will, and such offer was rejected. The ruling was duly excepted to. That exception is urged here upon the ground that the rejected evidence bore on the credibility of the witness in regard to his evidence in explanation of some statements attributed to him as to the validity of the Rodman will, notwithstanding what he claimed to be the fact as to neither his father nor Whalen having signed it in the presence of the testator. If the rejection of the evidence was error at all, it was harmless error, because, as we have seen, the fact

is established beyond reasonable controversy that the witness knew, when the Rodman will was drawn, all the requisites of a valid will.     Therefore additional evidence to the same effect could not have benefited the proponents.     If his attempted explanation of how he came to say that the Rodman will was valid was improbable because of his knowledge of the requisites of a valid will, that improbability stands out just as significant in the record without the rejected evidence as it would with it.

Complaint is made that the court framed a verdict so as to include three propositions, while as to two of them there was no controversy.     It is not perceived how the appellants were prejudiced by that, because, by the instructions given to the jury, they were confined to the disputed proposition and directed to answer yes or no to the questions according as they should find in regard to such dispute.     Moreover, a verdict in an equity case being merely advisory, if not proper in form, that does not constitute harmful error sufficient to affect the judgment.

Several exceptions are called to our attention to instructions given to the jury and to refusals to instruct.     A complete answer to such exceptions is that errors of that kind in an equity case are not reversible.

Further complaint is made that the trial court gave no opportunity for a hearing on the part of the appellants after the verdict was received and before the findings of fact and conclusions of law and the direction for the entry of judgment were filed.     No merit is perceived in such complaint. The uniform practice in equity cases, where all the questions of fact have been submitted for decision, is for the court to file the proper findings and conclusions of law without any further hearing.     That is what the statutes seem to contemplate and such has always been the practice in this state; and it cannot be varied by the practice of courts elsewhere, if such practice exists.     The subject is plainly regulated by

statute.   Sec. 2863, Stats. 1898, provides that upon a trial by
the court its decision shall be given in writing and filed with
the clerk, and judgment shall be entered accordingly; and
sec. 2422a provides that whenever any matter is heard by
the court or presiding judge, the decision thereof may be
made out of term and may be by an order or judgment or
direction that an order or judgment be entered; and upon
filing such decision in writing or the order or judgment
signed by such judge in the office of the clerk of the circuit
court in the county where the action or proceeding is pend-
ing the same shall be entered by the clerk and judgment
shall be entered accordingly.   It will be seen that when a
case has been submitted, which it is the duty of the trial
judge to decide, nothing further need be done till the find-
ings are placed on file in the office of the clerk of the circuit
court, and when such findings are so filed, if they contain
a proper direction for the entry of judgment, judgment is
then to be entered without further proceedings.

The foregoing covers all that need be said on this appeal.

*By the Court.*— The judgment of the circuit court is af-
firmed.

Winslow, J.   A dissent upon a mere question of fact is
rarely justifiable, but, so strong is my conviction that jus-
tice has miscarried in this case that I am compelled to re-
cord my dissent upon such a question. This will was executed
with apparently all due formalities in 1881, and fifteen years
later it is sought to defeat its validity by the vague and
misty recollections of three witnesses, against the certificate,
made at the time, of two lawyers who knew what was nec-
essary to constitute a valid execution. The attestation clause
states that the witnesses signed in the presence of the tes-
tator.   This creates a very strong presumption that the fact
was as stated, especially after the lapse of fifteen years; and
that presumption cannot be overcome, except upon very

clear and convincing proof. *In re Lewis's Will*, 51 Wis. 101. Such proof, in my judgment, is not here. Robert R. Menzie is shown by the evidence, and admitted by all the parties, to have been an able lawyer of long practice in Wisconsin at the time this will was executed. He drew this will. He signed the attestation clause. He knew what was necessary to properly attest a will. Mr. Rodman was an old and valued client. Either Robert R. Menzie was guilty of an act of idiotic carelessness, or else he was false to his client, if he signed the will as a witness in the absence of his client and permitted Whalen to do the same thing. No one has the hardihood to claim that Robert R. Menzie was a half-wit, or that he was false to his clients.

Nor do I think the circuit judge should have made findings without giving the parties an opportunity to be heard or make a motion after the rendition of the verdict. I do not pretend to know what the practice is in all of the trial courts of the state, but I do know that for several years, when the writer was on the trial bench of the First circuit, it *was not* the practice to enter judgment upon an advisory verdict without giving the defeated party an opportunity to move for findings and judgment notwithstanding the verdict. Further, I may say that it seems to me that such opportunity should always be given, and I think it is given in well-conducted trial courts.

On April 7, 1899, the judgment of this court was modified so as to provide that appellants' costs in this court and in the circuit court should be paid out of the estate.