WILL OF ZIEGENHAGEN: WENDT, Respondent, vs. ZIEGEN-
HAGEN, Appellant.

*January 31—February 20, 1912.*

*Wills: Revocation: Presumption: Establishing lost will: Burden of
proof: Sufficiency of evidence.*

1. The presumption of destruction *animo revocandi* which arises
   when a will cannot be found after the death of the testator, is
   one which may be overcome by evidence, the burden of proof
   being on the proponent.
2. The evidence in this case (stated in the opinion) is *held* to sus-
   tain findings by the jury and by the circuit court that the tes-
   tator did not destroy his will or cause it to be destroyed with
   the intention of revoking it. [Whether findings to the effect
   that the will was destroyed or suppressed by his widow and
   son, or by one of them, are sustained by the evidence, not de-
   termined.]

APPEAL from a judgment of the circuit court for Waupaca
county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Proceedings were commenced in the county court for the
probate of an alleged lost will under sec. 3791, Stats. (1898).
The county court refused to admit the will to probate, and on
appeal to the circuit court the will was probated. The case
was tried before a jury in the circuit court and the following
verdict returned:

"(1) Did William Ziegenhagen execute a valid will on or
about June 9, 1900, at the office of Connell & Hart, in Wau-
paca, Wisconsin? *A.* (by the court). Yes.

"(2) Did said testator in said will dispose of his property
as set forth in Exhibit 'A' attached to the petition of propo-
nents, and name *Augusta Wendt* as executrix? *A.* (by the
court). Yes.

"(3) Did said testator leave the will in the office of Con-
nell & Hart until sometime in the year 1905 or 1906, and
then take the same into his own possession and carry it away
with him? *A.* (by the court). Yes.

"(4) Said testator, William Ziegenhagen, died January 21, 1909.    Did he prior to his death destroy or cause to be destroyed said will, with the intention of revoking it? A. No.

"(5) Did Marie Ziegenhagen and *Fred Ziegenhagen,* or either of them, at any time prior or subsequent to the death of William Ziegenhagen, destroy or suppress said will, or cause same to be done, without the knowledge or consent of William Ziegenhagen?    *A.*  Yes."

The court approved the verdict of the jury and made the following findings: That said William Ziegenhagen died in the village of Weyauwega, Waupaca county, Wisconsin, January 21, 1909; that at the time of his death he was an inhabitant of said village and owned property, both real and personal, in the state of Wisconsin; that at the time of his death he was eighty years of age and had resided in said village since 1899; that he left surviving him his widow, Marie Ziegenhagen, seventy-five years of age, his son, *Fred Ziegenhagen,* forty years of age, and a daughter, *Augusta Wendt,* forty-six years of age, his sole and only heirs at law; that another son, August Ziegenhagen, who went to Montana twenty-one years ago, has never since been heard from, and a daughter, Minnie Ziegenhagen, who was incompetent, died February 14, 1908; that in the year 1895 said William Ziegenhagen owned a 180-acre farm in the town of Bloomfield, Wisconsin, valued at $11,000, and personal property thereon of the value of $1,500, all of which at that time he conveyed to his son, *Fred Ziegenhagen,* in consideration of a mortgage on said premises of $2,000 payable jointly to himself and wife, and crops raised on said premises for the year 1895, and a contract that said *Fred* would support said William Ziegenhagen and his mother, Marie Ziegenhagen, during the remainder of their natural lives; that said William Ziegenhagen continued to live on said farm with his wife and son and daughter Minnie until the spring of 1899, when he bought a small home in the village of Weyauwega, moved there, and lived alone

one and one-third years, when *Fred Ziegenhagen* married, after which time Marie Ziegenhagen and daughter Minnie went to live with him; that immediately after the death of said William his widow went to live with her son *Fred,* with whom she continued to live; that in the spring of 1900 William Ziegenhagen brought suit against *Fred Ziegenhagen* and Marie Ziegenhagen with reference to their property matters; that no complaint was ever served and the matter was settled out of court, by which settlement *Fred* agreed to pay his father the sum of $500 for the crops that were raised on his farm during 1895 and also $150 a year, to be paid semi-annually, in lieu of furnishing him food as mentioned in the contract for life support; that *Fred Ziegenhagen* failed and refused to pay the first semi-annual payment of $75 when it became due and also failed and refused to pay the $500 according to his agreement for the first year's crops, and suit was brought by said William against *Fred* in circuit court in 1901 to enforce payment of the same; that said action was duly tried September 7, 1901, and said Marie Ziegenhagen appeared at the trial to render what assistance she might to her son to defeat her husband's claim; that judgment was rendered in said action in favor of William Ziegenhagen for the full amount of his claim, which was paid; that said William Ziegenhagen gave his daughter, *Augusta Wendt,* about $30 worth of furniture at different times, and after settlement of said action with his son in 1900 gave her $1,000 in money, which is all the property he ever gave her; that the value of the real estate owned by said William Ziegenhagen, deceased, at the time of his death was $3,000 and the value of the personal property was $2,400; that said deceased, at the law office of Connell & Hart in the city of Waupaca, on the 9th day of June, 1900, duly signed and executed in writing and published in presence of two witnesses, Samuel A. Connell and John C. Hart, his last will and testament, and said witnesses at said time and place in presence of said tes-

tator and at his request and in the presence of each other duly subscribed said will as attesting witnesses; that said will in substance was as follows:

"*Last Will and Testament of William Ziegenhagen.*

"I, William Ziegenhagen, of the village of Weyauwega, Waupaca county, Wisconsin, being of sound mind and memory, do make, publish, and declare this my last will and testament, hereby revoking all former wills, bequests, and devises by me made:

"After payment of my just debts and funeral expenses I give, devise, and bequeath to my wife, Marie Ziegenhagen, the share of my property which the law allows her.

"I give and bequeath to my son, *Fred Ziegenhagen,* one dollar.

"I give and bequeath to my daughter, Minnie Ziegenhagen, the sum of one thousand dollars providing she is alive at the time of my death. In case she does not survive me the same shall go to my daughter, *Augusta Wendt.*

"I give, devise, and bequeath to my daughter, *Augusta Wendt,* all the remainder and residue of my estate of whatever name, title, and description, real, personal, or mixed, and hereby appoint her executrix of this will.

"In witness whereof I have hereunto set my hand and seal this 9th day of June, 1900.

"WILLIAM ZIEGENHAGEN.  (Seal.)"

That due execution of said will and the provisions thereof were clearly and satisfactorily proven by Samuel A. Connell and John C. Hart and *Augusta Wendt,* witnesses on the trial of this action; that at the time of writing, signing, witnessing, and executing said instrument bearing date on or about the 9th of June, 1900, said William Ziegenhagen was of full age and also of sound mind, and before and since the making of said will had always been through his whole life to time of last sickness of sound mind; that said testator left said will in the office of Connell & Hart until sometime in 1905 or 1906, when he took the same into his own possession and carried it away with him; that said William Ziegenhagen was the cus-

todian of the will of one Follendorf, a neighbor, and kept said Follendorf's will, together with his own private papers, locked in a drawer in a closet in his residence; that Marie Ziegenhagen, his wife, would occasionally get the key and unlock the drawer containing said valuable papers and look the same over; that said William Ziegenhagen had a stroke of paralysis several days prior to his death, and remained in a paralyzed condition until he died; that immediately after he suffered said stroke of paralysis said Marie Ziegenhagen took from him the key to said drawer and took therefrom all of his valuable papers and put them in her bosom; that she permitted said William Ziegenhagen to sit in a chair in his paralyzed condition for two days before calling in any help for him; that said Marie Ziegenhagen had taken the part of her son, *Fred Ziegenhagen,* as against her husband on different occasions and was disposed to aid said son and was always on very friendly terms with said son; that *Fred Ziegenhagen,* when notified of his father's illness, although he lived only a short distance from his sister, *Augusta Wendt,* did not send her any word of her father's serious illness; that he went at once to his father's house in the village of Weyauwega and was there with his mother several hours before the arrival of said *Augusta Wendt;* that said William Ziegenhagen recognized the existence of his will down to a short time before his death; that said William Ziegenhagen did not, prior to his death, destroy or cause to be destroyed said will with the intention of revoking it; that said will was never revoked or canceled by said testator, but that Marie Ziegenhagen and *Fred Ziegenhagen,* or one of them, did, at some time prior or subsequent to the death of said William Ziegenhagen, destroy or suppress said will, or cause the same to be done, without the knowledge or consent of said William Ziegenhagen, and that said will cannot be found, though diligent search and inquiry have been made.

And as conclusions of law the court found that Exhibit "I"

which is fully set out in the testimony, bearing date June 9, 1900, and propounded as such as the last will and testament of said William Ziegenhagen, deceased, should be established and admitted to probate as and be adjudged to be the last will and testament of said deceased, and that letters testamentary thereon be directed to issue to *Augusta Wendt,* named therein as executrix thereof, upon her complying with all requirements of law in that behalf provided; that the judgment of the county court refusing to admit said instrument to probate as the last will and testament of William Ziegenhagen, deceased, should be reversed; that said matter, together with the records and files relating thereto, should be remanded and transmitted to the county court of Waupaca county, with directions to said court to proceed in said matter in the manner provided by law; that the proponent, *Augusta Wendt,* should have full costs against the estate.

Judgment was entered accordingly, from which this appeal was taken.

For the appellant there was a brief by *Byron B. Park* and *C. F. Crane,* and oral argument by *Mr. Crane.*

For the respondent there was a brief by *John C. Hart* and *S. A. Connell,* and oral argument by *Mr. Hart.*

KERWIN, J.   The contention of the appellant for reversal is that the evidence is not sufficient to overcome the presumption of destruction of the will by deceased *animo revocandi.* The questions covering this contention were submitted to the jury and answered in favor of the respondent.   The verdict of the jury was approved by the court and further findings made, which appear in the statement of facts.   The proceeding to probate the will in question is based upon sec. 3791, Stats. (1898), which provides for the establishment of a lost or destroyed will.   Counsel for appellant rely upon the proposition of law that when a will cannot be found, after the death of the testator, there arises a presumption that it has

been destroyed for the purpose of revoking it. But this pre-
sumption may be overcome by evidence, the burden being
upon the proponent. *In re Valentine's Will,* 93 Wis. 45, 67
N. W. 12; *Gavitt v. Moulton,* 119 Wis. 35, 96 N. W. 395.
Sec. 2290, Stats. (1898), provides that no will shall be re-
voked unless by burning, tearing, canceling, or obliterating
with the intention of revoking it, by the testator or by some
person in his presence and by his direction, or by some other
will or codicil in writing. The undisputed evidence shows
that William Ziegenhagen duly executed his will June 9,
1900, and died January 21, 1909, and that after his death
his will could not be found. There is no serious dispute as
to the contents of the will. So we come to the only question
in the case, namely, whether the presumption of revocation
has been overcome. The verdict of the jury and the findings
of the court below are so full and explicit that no further
statement of facts is necessary. We therefore approach the
question whether the evidence is sufficient to overcome the
presumption of revocation and support the findings. The
only reason which can be perceived for destroying the will
with intent to revoke it, upon the established facts, is the
purpose to give *Fred,* son of William Ziegenhagen, deceased,
upwards of $2,000 more than he had received before his
father's death. As shown by the evidence and the findings,
*Fred* had been given the bulk of his father's property before
execution of the will. It also appears from the finding that
after the transfer of the property to *Fred* his father com-
menced two lawsuits against him. The first was settled and
the other went to judgment, and the amount of said judg-
ment was paid by *Fred.* It is also established that the only
property which *Augusta Wendt* received during the lifetime
of her father, William Ziegenhagen, was $1,000 in money and
$30 worth of furniture, and that the value of the real estate
owned by deceased at the time of his death was $3,000 and
the personal property $2,400. The relations of the parties,

therefore, and all the facts established by the record support the idea that no reason existed at any time after the execution of the will for changing it so as to give *Fred* any portion of his father's property other than that received by him before the execution of the will.   Moreover, the evidence appearing in the record is ample to support the findings that deceased did not revoke his will.   The evidence clearly shows that the deceased, many times after the execution of the will, recognized its existence, and not only manifested no disposition to change it, but affirmatively asserted that he did not wish to change it,—that it was all right and should so remain.   The will remained with his attorneys for about six years after its execution and until about three or four years before the death of said Ziegenhagen, at which time he took it from his attorneys' office, stating that he had no intention of changing or destroying it or making a new one.   It also appears that after deceased transferred to his son *Fred* the farm of 180 acres together with the personal property mentioned in the findings, he left the farm, and his wife, Marie Ziegenhagen, remained with *Fred* until he married, when she again went to live with her husband.   The evidence shows that *Augusta Wendt* was at all times on the most friendly terms with her father and performed services for him at various times, and that he often stated that she was to have his property after his death.   In a conversation which deceased had with one Glock a year or two before his death Glock stated that he had had lots of trouble with his wills, and told deceased that he would have to look out that he made his right, and deceased replied, "Mine is all right made," and asked Glock whether it would be necessary to record it.   Several other statements are related in the evidence in which deceased said that his daughter, *Augusta Wendt,* was to have his property after his death, and that *Fred* had already received enough.   In one conversation during the last years of his life when his wife, who apparently from the record was partial to *Fred,* spoke to

him about changing his will, deceased said that he would not make his will over.    The evidence also shows that during the last year of his life, when *Augusta Wendt's* daughters were helping deceased clean house, papering, and painting, he said to them that he could not pay them, but that the property was their mother's and that they would have it some day.    He also made similar statements with reference to improvements and repairs being made by them upon the property.    But, without further recital of the evidence, it is sufficient to say that it is ample to support the verdict of the jury and the findings of the court below to the effect that the deceased did not destroy his will with intent to revoke it.    *Adams v. Rodman,* 102 Wis. 456, 78 N. W. 588, 759; *Ewing v. McIntyre,* 141 Mich. 506, 104 N. W. 787; *Aikin v. Weckerly,* 19 Mich. 482; *Bauskett v. Keitt,* 22 S. C. 187; *Schultz v. Schultz,* 35 N. Y. 653; Rood, Wills, § 357 and cases cited.

Where the will was kept, after having been removed from the office of the attorney who drew it, does not appear. There is evidence that Mrs. Ziegenhagen did not know the terms of the will, but believed a will had been drawn by her husband, and stated in a conversation with her granddaughter that she thought the law was wrong that allowed a man to make a will and not let his wife know about it.    The court found that deceased kept his papers locked in a drawer in a closet, and the evidence shows that sometimes the key to the box was carried by him and sometimes was left in the pocket of his clothes hanging in the wardrobe.    It seems that during his last illness he had the key in his pocket on his person and that Mrs. Ziegenhagen took it, and that she and her son *Fred* had ample opportunity to get possession of the will if it was in the locked box.    Deceased had a paralytic stroke and remained with his wife about two days before any one was notified, and died shortly thereafter.

It is claimed by respondent that during this last illness Mrs. Ziegenhagen, after obtaining the key, removed and se-

creted the will, or destroyed it, or that she and her son *Fred* did so. The court and the jury found that Mrs. Ziegenhagen and her son *Fred,* or either of them, either prior or subsequent to the death of William Ziegenhagen, destroyed or suppressed the will, or caused the same to be done, without the knowledge or consent of deceased. It is contended on the part of the appellant that the evidence is not sufficient to support the finding to the effect that the will had been destroyed by *Fred* and Mrs. Ziegenhagen, or either of them, because the law requires more than a preponderance of evidence upon such an issue. We do not think it necessary to consider or decide this question. The findings are ample and well supported by the evidence to fully overcome the presumption that deceased destroyed his will with intent to revoke it. That is sufficient for this case. It follows that the judgment must be affirmed.

*By the Court.*—The judgment is affirmed.