## WILL OF MARESH.

*April 12—May 9, 1922.*

*Wills: Proper execution: Attestation clause: Attendance of attorney: Presumption: Attorneys at law.*

1. Evidence as to the execution of a will, aided by the presumption of regularity arising from the presence of the attestation clause, is *held* sufficient to show proper execution, although the testimony of the surviving attesting witness was uncertain and wavering as to the details attending the signing of the will.
2. Though an attestation clause is unnecessary, the declarations of attesting witnesses as contained in such clause are presumptive evidence of proper execution; and this presumption need not be supported by affirmative memory of witnesses, but, to defeat the will, must be overcome by evidence to the contrary.
3. The fact that a will was drawn by an attorney at law who directed its execution and was present at the time is in itself strong presumptive evidence of the regularity of its execution.
4. Attorneys at law are *quasi*-officers of the court, subject to regulation by the court, and their functions are *quasi*-judicial. The profession is an inherent element in our judicial system, and, though subject to regulation by the legislature and the courts, it cannot be abolished.

APPEAL from an order of the county court of Racine county: WALTER C. PALMER, Judge. *Affirmed.*

The appeal is from an order dated December 30, 1919, admitting to probate a certain instrument dated April 20, 1918, purporting to be the last will and testament of Margaretta Maresh, deceased.

Will of Maresh, 177 Wis. 194.

The testatrix was twice married, she having by her first husband (Sladke) three children, and as the issue of her second marriage four children, one of the children of the latter marriage having predeceased her, and leaving a minor named *Violet*. By the provisions of the will the estate is equally divided between all of her surviving children, and this appeal is taken by the guardian *ad litem* of *Violet* and the three surviving children of the latter marriage.

The will is contested upon three grounds: 1. Improper execution. 2. Undue influence. 3. Mental incapacity. We will briefly treat of the facts applicable to each ground in the opinion.

For the appellants there was a brief signed by *Heck & Krenzke* of Racine, and oral argument by *Charles Krenzke.*

For the respondents there was a brief by *John H. Liegler,* executor, and *Simmons, Walker & Wratten,* of counsel, all of Racine, and oral argument by *John B. Simmons.*

DOERFLER, J. Two alleged last wills and testaments were presented for probate; one dated December 19, 1907, and the other April 20, 1918. The latter will contains a clause specifically revoking all former wills and testaments made by the testatrix. It also appears that in her former will the deceased made testamentary disposition of her property substantially different from the latter.

The learned county judge in his opinion states that "The only serious contested question at issue on the hearing was whether or not the last executed instrument was duly executed as the last will and testament of Margaretta Maresh, deceased," and we fully agree that on this appeal such is the only question upon which a reasonable controversy might be raised.

On the face of the will the instrument bears every indication of proper execution and complies with all legal requirements. John Protexter, one of the subscribing witnesses, had died a short time prior to the hearing in the

lower court, and his wife, Margaret, was the only subscribing witness produced upon the hearing. According to her evidence she had arrived at almost three-score years and ten of life, had suffered a serious illness after her husband's death, as the result of which her memory had been greatly affected, and while at the hearing she claimed that she had not fully in all respects recovered her former strength, her memory had been practically restored. That, however, was merely her individual version of her condition, for an examination of her evidence discloses a mental condition which is far from being persuasive of her own version. Her testimony was uncertain, wavering, and unsatisfactory, notwithstanding that it was applicable to a situation which had transpired during a period less than two years prior to the hearing. She testified that she was called to the home of the deceased by the latter, and told that she was needed as a witness to a writing. She also stated that at the time of the execution of the instrument she did not know that the document was a will; that her husband had signed before her and that her signature succeeded that of her husband, and that the deceased signed the will after the two subscribing witnesses had affixed their names. Thereafter she testified that her husband's name had been affixed before she arrived at the home of testatrix. She further testified that the document was read by the scrivener in the presence of the deceased and of the witnesses, but that she was unable to determine from such reading the nature of the instrument.

From such evidence we must conclude that, by reason of advanced age and serious illness, her memory had been greatly affected and that her recovery had not taken place as testified to by her. She fully identified the signature of her husband and her own, and unmistakably established the signature of the deceased. The will bore a full attestation clause over the signatures of the subscribing witnesses.

The will was drawn by one John H. Liegler, an attorney

at law, and he was present during the entire time of the execution. He testified to the fact of the execution in all its minutest details, and established beyond controversy that the will was' executed regularly and that it was duly and properly attested, and that before the execution of the will he stated that the instrument was the last will and testament of the deceased.

Under these circumstances, can it be said that the provisions of the statute were not fully complied with? The object of the statute requiring attesting witnesses is to place the testator, at the time of the execution of the will, in the presence of disinterested witnesses, so as to relieve him from all improper importunities, influences, and solicitations, and so as to enable such witnesses, when the proper time arrives, among other things, to testify to the legal execution of the will. 28 Ruling Case Law, p. 123, § 77.

While in law an attestation clause is unnecessary, it is quite uniformly held, not only in this court but by courts generally, that the declarations of the attesting witnesses as contained· in the attestation clause constitute presumptive evidence of the proper execution of the will, and such presumption need not be supported by affirmative memory of witnesses, but, to defeat the will, must be overcome by evidence to the contrary. *Gillmor's Will,* 117 Wis. 302, 94 N. W. 32.

It was held in *Will of Hawkinson,* 143 Wis. 136, 126 N. W. 683:

"As to wills, however, the rule seems to be general . . . that the attestation itself is *prima facie* proof of all facts essential to due execution, to which attesting witnesses could depose if present, including the authenticity of testator's signature, . . . also his volition in signing and his mental capacity and understanding of his act." See, also, *Adams v. Rodman,* 102 Wis. 456, 78 N. W. 588, 759; *Will of Arneson,* 128 Wis. 112, 107 N. W. 21; *Will of Griffith,* 165 Wis. 601, 163 N. W. 138; 40 Cyc. 1274, and cases cited.

The fact that the will was drawn by an attorney at law,

who directed its execution and was present at the time, in itself is strong presumptive evidence of the regularity of the execution.  *Adams v. Rodman*, 102 Wis. 456, 78 N. W. 588, 759.

The evidence clearly shows that the information upon which the will was based was furnished by the deceased to her counsel at the latter's office; that the instrument was then carefully prepared and reduced to writing; that it was read to the testatrix; and that it was in all respects in accordance with her wishes.

The importance to testators of having their wills drawn by members of the profession cannot be too strongly emphasized.  Attorneys at law are licensed by virtue of their legal attainments, such attainments involving a field covering in detail everything concerning property rights, the law of descent, testamentary distribution, the creation of trust estates, and numerous other matters closely affiliated to the subject.  No one but an attorney at law can legally draw a will for compensation, under the laws of this state, for the act itself involves the practice of the law, which is expressly forbidden under penalty to all not legally admitted to practice.  Attorneys at law are *quasi*-officers of the court, subject to regulation by the court, and their functions are, as has been held, *quasi*-judicial.  The profession itself is an inherent element in our judicial system, and, while the office is subject to regulation by the legislature and the courts, it cannot be abolished.  Under these circumstances the importance and the dignity of the office of an attorney must be recognized judicially, and with it, as a necessary attribute, follows the importance and the presumption that obtains in favor of professional activities.  Such is not only the standing of the profession in countries having adopted the Anglo-Saxon system of jurisprudence, but in all civilized countries of the world.  True, in European countries wills to a large extent are drafted by notaries public.  But in such countries

a notary occupies a higher and more responsible position than under our system, and his acts are considered of a *quasi*-judicial nature.

So that we must come to the inevitable conclusion that, notwithstanding apparent contradictions in the testimony of Mrs. Protexter, under the circumstances detailed in the evidence, her faltering version and her unreliable memory cannot withstand the strong presumption of regularity which arises and obtains by reason of the attestation clause, fortified and supported by the oral testimony of the counsel who drafted and directed and was present at the execution of the will.

When we come to the two other assignments of error, viz. the charge of undue influence and of mental incapacity, there arises within us a feeling that in attacking the will upon these grounds great injustice has been done to the ancient legal right of a testator to dispose of his belongings in accordance with his ideas of justice. Here was a woman eighty-two years of age, an humble but worthy member of society. Here was a life devoted to the interests of her children and to the welfare of mankind. The little estate disposed of was the product of many years of hard and unselfish labor. As her life was about to draw to a close she realized that some injustice had been done by her towards her own flesh and blood, and the will as finally drafted represents a fair, equitable, and equal distribution among all her surviving children. True, she did not provide for a child of a deceased son, and it appears from the evidence that she was actuated by motives not only satisfactory to her, but which would appear satisfactory to everybody. Such a will is not readily upset unless the evidence is clear and satisfactory. Numerous witnesses testified to her ability to transact business at or about the time of the making of the will. The testimony on which is based the allegations of mental incompetency is almost unworthy of consideration.

There is no evidence in the case that any undue influence was exercised upon her mind or that the will is the product of fraud or undue influence.

. Immediately after the execution of this will an effort was made to declare the deceased incompetent and place her under guardianship, which proceeding met with defeat in the county court. The same influences at work during the guardianship proceedings made themselves manifest during the contest of the will. Parental love and affection should have avoided this stigma upon the memory of this old, humble, and worthy woman.

The order of the county court admitting the will to probate is therefore affirmed.

*By the Court.*—It is so ordered.