Estate of Slama: Davis, Appellant, v. Slama, Respondent.

*November 29, 1962—January 8, 1963.*

For the appellant there were briefs and oral argument by *Philip Weinberg* of Milwaukee.

For the respondent there was a brief and oral argument by *Lawrence A. Willenson* of Milwaukee.

WILKIE, J.    It is undisputed that the will of Julius Slama, dated June 19, 1956, was properly executed and that there was no later will or codicil. The sole issue is whether the will was destroyed intentionally by the testator prior to his death so that the will was revoked and he thus died intestate.

Sec. 238.14, Stats., requires that in order for a will to be revoked there must be an intent to revoke.[1] Sec. 310.10 provides for the proof of a lost will and proof of a lost will is permitted where the will is either lost or destroyed by accident or design[2] and not by intention as provided under sec. 238.14.

---

[1] "238.14 WILLS, HOW REVOKED. No will nor any part thereof shall be revoked unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator or by some person in his presence and by his direction, or by some other will or codicil in writing, executed as prescribed in this chapter, or by some other writing, signed, attested, and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. The power to make a will implies the power to revoke the same."

[2] "310.10 LOST WILL, HOW PROVED. Whenever any will of real or personal estate shall be lost or destroyed by accident or design the county court shall have power to take proof of the execution and validity of such will and to establish the same. The petition for the probate of such will shall set forth the provisions thereof. The circuit court shall have the same power in an action brought for that purpose."

This is clearly not a case of a lost will. Page two of the will was found although page one was never found in the safe-deposit box or anyplace else.

Also it cannot be contended that the will was destroyed by design, meaning someone other than the testator fraudulently destroyed the will. First, the will (the second page only) was in the safe-deposit box on June 12th. Second, the box was leased to the deceased in his name only. Third, there was no testimony showing that anyone else had access to the box before the will was found. Fourth, an officer of the bank opened the box. Fifth, a "cursory" search was made to no avail through the rest of the papers in the box to find the missing page. Therefore, even though the proponent introduced evidence to intimate that after June 12th and after the will was sent to the register of probate, the objector, Frank Slama, and the special administrator, Larsen, could have found the missing page (in the box or otherwise) and then had it destroyed, and introduced further evidence that the objector "threw" away some clothing which was in the decedent's garage without examining the pockets to see if the missing page was in there, such testimony does not in any way show a destruction of the will by a third party. Special Administrator Larsen, in the presence of the attorney for the objector, made an inventory of the contents of the box. He did not list every item because he felt some form letters in the box were unimportant but he did state that he put every item found in the first box into a second box which he rented in his capacity as special administrator. The mere fact that the inventory was made in private and not in the presence of a bank official is not persuasive. Any finding that these parties could have found the missing page would be pure speculation.

Thus we are left with the question of whether the will was destroyed by intention or by accident. The trial judge in his memorandum decision stated:

"The instrument was typed on a good quality of paper and was backed by a heavier quality of paper, but not a rigid back. Neither the back nor page two of the instrument show any marks or indication of a quick or mistaken act. Underneath the staple of the folded front part of the back appears a slight remnant of page one. This would indicate that Julius Slama had to use some conscious pressure in the tearing, as the paper was of better quality. He must have held one hand on the part where the overflap was on the instrument and torn off the page with his other hand, as the back and page two thereof show no crinkling or evidence of rough handling, indicating some deliberation on the part of Julius Slama."

The trial court therefore determined that the will was not destroyed by accident or design, but that the deceased tore and destroyed the front page with the intention of revoking the entire will.

The trial court's findings will be sustained by this court unless they are against the great weight and clear preponderance of the evidence.[3]

In reviewing the evidence here we must first recognize that where a will cannot be found after the death of the testator there arises a presumption, *animo revocandi*, that it has been destroyed for the purpose of revoking it.[4] The presumption may be overcome by evidence, the burden being on the proponent.[5]

In the instant case the presumption arises since the entire will could not be found, but only one of the two pages.

The evidence advanced by the proponent was not sufficient to convince the trial court that the presumption had been overcome. The evidence supporting the contention that the destruction of the first page was unintentional and the testa-

---

[3] *Estate of Beale* (1962), 15 Wis. (2d) 546, 556, 113 N. W. (2d) 380; *Drott Tractor Co. v. Kehrein* (1957), 275 Wis. 320, 323, 81 N. W. (2d) 500.
[4] *Wendt v. Ziegenhagen* (1912), 148 Wis. 382, 134 N. W. 905.
[5] *Wendt v. Ziegenhagen, supra.*

tor died under the impression that the will was still intact and that his niece, Mrs. Davis, was still his sole legatee can be summarized:

1. On May 26, 1961, the deceased, along with Mrs. Davis and her husband, went to Attorney Stoecker's office and the purpose of this visit was to make a gift of the deceased's homestead to his niece, Mrs. Davis. Because of the tax problem involved, the property was not conveyed at this time but testimony was adduced that the deceased was not concerned about the conveyance because he stated that she would receive everything under the will anyway.

2. On May 30th, the deceased and his sister Emma, mother of Mrs. Davis, went to Arlington cemetery in Milwaukee, and at that time he once again stated that Mrs. Davis would receive everything under the will.

3. Testimony by the objector inferred that the deceased was angry with his niece because the deceased, in a discussion with his brother Frank, stated that all "they" wanted was his money and no one wanted to take care of him. On June 4th, the deceased, although invited to attend Mrs. Davis' daughter's birthday party, did not attend. Mrs. Davis and her mother thereupon went to his home at which time the deceased stated that he had forgotten about the party, but he nevertheless gave Mrs. Davis a cash gift of $10 for her daughter.

4. On June 5th and on the Monday before he died, a Mrs. Long and a Mrs. Rose, both neighbors of the deceased, testified that in conversations with the deceased he stated that his niece's children would soon be playing with their children as he was about to give his home to Mrs. Davis and he in turn was moving into a home for the aged.

The undisputed facts remain, however, that: (1) The will document was found after testator's death and the first page had been removed; and (2) the testator was the only person having access and control over the box.

One may wonder why the testator did what he apparently did. If he wanted to revoke his entire will why did he not rip up the whole document? Did he feel that since page one contained the testamentary provisions it was only necessary to destroy that page? Perhaps he thought that by just tearing up page one he was cutting out his niece but for some reason he wanted the rest of the will to stand. This is all pure speculation and neither the trial court nor ours may rely on any speculation as the basis for its holding.

The trial court's findings are not against the great weight and clear preponderance of the evidence.

Two Wisconsin cases are cited by appellant to support her position. In *Wendt v. Ziegenhagen, supra,* the subject will was never found and the record contained no hint that the testator had any reason for changing it. The court ruled that the presumption of revocation was overcome and admitted the will. In *Will of Donigian* (1953), 265 Wis. 147, 60 N. W. (2d) 732, the court held that the presumption of intentional destruction is overcome if evidence to the contrary is introduced, which evidence if uncontradicted would support a finding. No will was found and the testator repeatedly referred to his will with satisfaction. These cases are distinguishable because in each case the will or any part of it was not found, yet there was undisputed evidence in each case pointing to the testator's recognition and acceptance of the will. This is entirely different from the situation in our case where the will has been found, but with the important first page missing under circumstances where only the testator could have reached the paper and destroyed it.

The case of *Estate of Beale, supra,* is cited by the appellant, but is wholly inapplicable. In that case the missing first page of the disputed 14-page will was found among the testator's professional papers to which others had access; the page contained only the usual introductory and nontestamentary provisions; there was no evidence showing that the testator

intended to destroy or did destroy the will. These facts are clearly different from those in the instant case and hence it is no authority for the admission of the disputed will.

*By the Court.*—Judgment affirmed.