## *In re* BELL'S ESTATE

### STARKWEATHER V. BELL.

Where it is shown that a decedent made two wills at different times, each containing a clause revoking all former wills, and had such wills in her possession, but after her death only one could be found, the presumption is that she destroyed the other for the purpose of revocation, and in the absence of evidence to the contrary, that the will retained was the last one executed; but such inference cannot prevail, or the will be admitted to probate thereon, against the positive testimony of the person who drew both wills, which is not impeached, or successfully contradicted, that the will not found was executed last.

(Opinion filed August 29, 1900).

Appeal from circuit court, Lake county. Hon. JOSEPH W. JONES, Judge.

Proceedings instituted by W. J. Bell for probate of will of Jennie M. Bell, deceased, Courtney Starkweather, contestant. From the judgment of the circuit court rejecting the will, proponent appeals. Affirmed.

The facts are stated in the opinion.

*D. D. Holdridge & Son,* for appellant.

When a will once known to exist and to have been in the custody of the testator, cannot be found after his death, the legal presumption is, that it was destroyed by the testator with the intention of revoking it. Behren v. Behren, 25 N. E. 209; Colyer v. Colyer, 110 N. Y. 486.

*Murray & Porter,* for respondent.

The findings of a trial court will not be disturbed when the evidence is conflicting unless clearly against the weight of the evidence. Dowdle v. Cornue, 70 N. W. 632

FULLER, P. J. The only question presented on this appeal from a judgment rejecting a will offered for probate is whether such instrument dated September 6, 1892, is the last will and testament of Jennie M. Bell, who died on the 23d day of January, 1896 By this will W. J. Bell, the husband of deceased, is made the sole devisee and executor, and the will relied upon by contestant, Starkweather, a half-brother of the deceased, differs therefrom very materially, both in its terms and provisions, and expressly revokes all former wills by her made and executed. That the decedent made these two wills expressly revoking in each all wills theretofore made is undisputed, and there is some evidence tending to show that prior to the date of either she had made at least another, the terms and conditions of which are not disclosed by the record, Finding of fact No, 3 relates to and contains the will executed September 6, 1892, and finding No. 4 is as follows: "That the said Jennie M. Bell, deceased, at a time subsequent to the date of the will set forth in finding of fact No. 3, and in the spring of 1893, and at or about the month of June, A. D. 1893, executed a last will and testament at the city of DeSmet, in Kingsbury county, and State of South Dakota, in due form, differing in terms and provisions from the said will above set forth in finding No. 3, and so offered by W. J. Bell; and that said will of June, 1893, expressly revoked all former wills by her, the said Jennie M. Bell, deceased, made and executed, and that the same contained express words of revocation of all former wills by her, the said Jennie M. Bell, deceased, made and executed." The will found with the papers of Mrs. Bell after her death, and presented with appellant's petition to the county court for the purpose of being probated, is in due form, and witnessed

by A. P. Schenian and R. S. Gleason; but the will upon which respondent relies could not be produced, and counsel for appellant contend that the presumption is that this was the first will made, and was destroyed by the testatrix for the purpose of revoking the same, It seems to be well settled that where a will known to have been in the custody of the testator cannot, after his death, be found, the legal presumption is that it was destroyed by him for the purpose of revocation. Behrens v Behrens (Ohio Sup.) 25 N. E. 209; Collyer v. Collyer, 110 N. Y. 481, 18 N. E. 110. Were there nothing to the contrary, ordinary experience would justify the inference that the will destroyed or unaccounted for was executed prior to the one that was retained by the testatrix, and after her death regularly presented for probate. Entertaining the view that the burden lies upon respondent, Starkweather, to prove that the will not produced is in fact the last will and testament of Jennie M. Bell, deceased, we will determine from the record whether the finding of the court to that effect is sustained by the evidence. The witness A. P. Schenian, who for years was engaged in the practice of law in the village of DeSmet, where Mr. and Mrs. Bell resided, and had known them both from the time of their marriage, testified as follows: "I drew two wills for Mrs. Bell during the time I lived in DeSmet. The first will was the will here introduced, drawn September 6, 1892. The second was the spring of 1893. As near as I can give, the date was in May or June. It was a short time before she went to the World's Fair. I knew of her going to the World's Fair; knew she left DeSmet. The will was drawn in my office; the same office the 1892 will was drawn. As I remember the circumstances connected with drawing the will, it was one day in

the spring of 1893. She came into my office through the back door. I had a front entrance and an entrance from the back yard. She came through the back door, and wanted to speak to me privately, and asked whether anybody was present in the other room. She said she desired to change her will. She asked me whether it could be done. I explained it could be done by attaching a codicil or by drawing a new will, and that I believed drawing a new will was better than a codicil. The result was, a new will was drawn. Q. Did she at that time say anything about the 1892 will? A. She said this: She asked me what effect this new will would have upon the old will, and I said that I would see that the new will would revoke the old will. That was the substance. Of course, I don't remember the words used. She asked me if it was necessary to have more than one witness. I told her it was absolutely necessary to have more than one witness. She said she did not want anybody to know anything about it. I told her I would call in Dr. Rice, who was next door, and I would see he didn't say anything to anybody about it. I prepared the will. She signed it. There were witnesses to it,— Dr. Earl Rice and myself. She signed it in my office. Her signature was attached below, at the usual place. The witnesses signed below, to the left, at the usual place. She signed her name to it, and Dr. Rice and myself signed as witnesses. She signed it in our presence, and we signed as witnesses in her presence, and in the presence of each other, and she declared it to be her last will and testament. We signed it at her request, attaching our places of residence. The regular revocation clause was put in the will, 'hereby revoking all former wills,'— words to that effect. She took the

will with her, and carried it away.   The will, Exhibit `A, received in testimony here, is not the last will and testament I drew.   *  *  *  Q. State, as near as you can, the conditions of this last will of 1893 that you drew.   A. The disposition of the property.   She disposed of her property in this manner: She gave one-half of her property to her husband, W. J. Bell, and the other half to a nephew and niece of her's, children of her brother.   That is from my own memory.   I don't remember their names."

On cross-examination he testified in part as follows:   "I made the will for her in the spring of 1893.   I do not remember just the month, only it was a short time before she went to the World's Fair.   It may have been May, June, or April.   I could not state.   I did not have another will of Jennie M. Bell's before me at the time I drew the will Dr. Rice witnessed.   I did not see one at that tim e.   I asked her whether she had the will with her, and she said no; it was in the possession of Mr. Bell, and she didn't want to ask him for it.'   From the desposition of Dr. Earl Rice, read at the trial, we quote:   "I reside at Rowland, Story county, Iowa.   I am 29 years old, and by profession a physician and surgeon.   In the spring months of 1893, I resided at DeSmet, Kingsbury county, South Dakota.   At the time I knew Jennie M. Bell she was a married woman.   Her husband's name was W. J. Bell.   At the time referred to, I knew A. P. Schenian.   I knew of Mr. Schenian's drawing a will for Jennie M. Bell.   I witnessed that will. To the best of my recollection, that will was drawn and witnessed by me in the spring of 1893.   Besides myself, I think A. P. Schenian witnessed that will.   That will was signed and witnessed in the law office of A. P. Schenian, DeSmet, South

Dakota. To the best of my knowledge, Jennie M. Bell signed that will that I witnessed. She said the paper I witnessed was her will. I witnessed it in her presence. She was of sound mind and memory at that time." In a deposition taken a few months later, to be used on appellant's behalf, this witness testified, in substance, that five days before making such desposition W. J. Bell visited him at his home in Iowa, and refreshed his memory as to the probable fact that Walter N. Carroll was, at the time the will was witnessed, in an open adjoining room, and from such incident, and the fact that a question of office rental came up between the witness and Mr. Schenian and Mr. Carroll, who owned the building jointly at the time, he thought he witnessed the will about a year earlier, and was cross-examined with reference to the matter thus: "Q. Doctor, do you swear positively that this conversation you speak of was had on the day that you witnessed the will in Mr. Schenian's office? A. No, sir. Q. Doctor will you swear positively that the Mr. Carroll you refer to was in the adjoining room at the time you witnessed the will? A. As I stated before, I will not swear positively that Mr. Carroll was in the adjoining room all the time I was in Mr. Schenian's office * * * Q. When did you witness this will? A. I now think it was in the spring of 1892." Mr. Carroll testified, in substance, that he was in DeSmet for a month in the spring of 1892, and again at Thanksgiving time of that year; that his only other visit was late in the fall of 1893; and that he was never present in the office of A. P. Schenian while Jennie M. Bell, now deceased, was there to sign a will, or on any other business, and that no conversation ever took place between himself, Mr. Schenian, and Dr. Rice, in the spring of any

year, upon the subject of rent. Further, "that if it were true that Jennie M. Bell signed a will in the office of A. P. Schenian, at DeSmet, South Dakota, and that deponent was present in an adjoining room, it could not be possible, from the condition and situation of those rooms, for this deponent not to know that said Jennie M. Bell was present in the office of said A. P. Schenian." Ada A. Starkweather testified: "I live in Beaver Dam, Dodge county, Wisconsin. I am the wife of Courtney Starkweather. I knew Jennie M. Bell in her lifetime. I last saw her either the latter part of May or the first of June, 1893, at our house in Beaver Dam. She was going to the World's Fair at Chicago at that time. She was the wife of W. J. Bell. Her home, the time I last saw her, was in DeSmet, South Dakota. She talked with me a little about making a will. She said she had made either two or three wills before this one she had recently made. She said she had recently made a will. She said that in that will she had left one-half of her property to her husband and, one-half to my children, the children of her brother, to be equally divided between them." In addition to the foregoing, there is some testimony tending to show that at certain periods in her lifetime Mrs. Bell expressed a wish to give all her property to her husband, and again a desire to make a distribution thereof between him and the children of her half-brother, but we deem it unnecessary to incorporate any of such evidence into this opinion. A brother of appellant testified that some time prior to the 9th day of May, 1892, Mrs. Bell read in his presence a will of hers witnessed by Schenian and Rice, by the terms of which her property was disposed of in the manner designated by the will claimed to have been made in 1893; but this testimony, when

considered with certain militating circumstances, was evident-
ly regarded by the trial court as not of the utmost probity.
That, revoking all former wills, Mrs. Bell make a will wit-
nessed by Schenian and Rice, dividing her property equally
between her husband and the two children of her half-brother,
is conceded by all, and that such is her last will and testament
is shown by a fair preponderance of the evidence. It follows
that the motion for a new trial based upon the claim that the
evidence is not sufficient to sustain the finding of the court
that this will was made in the spring of 1893 was properly
overruled, and the judgment appealed from is affirmed.