In Re TJARK'S Estate.
STATE, Respondent, v. NIEUWENHUIS, et al, Appellants.

(227 N. W. 84.)

(File No. 6770.    Opinion filed October 15, 1929.)

G. M. *Caster*, of Lake Andes, for Appellants.

M. Q. *Sharpe*, Attorney General, and E. D. *Roberts*, Assistant Attorney General, for the State.

FULLER, C. This controversy arises out of a contest of the will of Henry P. Tjarks, deceased, late of Charles Mix county. The petition to contest said will was filed by the respondent, state

of South Dakota. It alleged that Tjarks died intestate and without heirs, and that a certain alleged copy of an alleged lost will of the decedent, which had previously been admitted to probate, was not in fact a copy of any will executed by the decedent, and that the same had been fraudulently manufactured and offered for probate for the purpose of defrauding the persons lawfully entitled to succeed to the property of the decedent. The case was first before this court, by the above title, in 43 S. D. 198, 178 N. W. 976, where it was held, among other things, that a new trial should be granted to permit the introduction of certain evidence rejected at the first trial; in 46 S. D. 154, 191 N. W. 446, where an order of the trial court allowing a new trial was affirmed; and in 49 S. D. 181, 207 N. W. 77, where it was held that the verdict of a jury was advisory only, and that the case should be remanded, to allow the trial court to make and enter its findings of fact and conclusions of law. On this appeal the sole question presented is whether the evidence is sufficient to sustain the decision of the trial court to the effect that the alleged lost will was never executed, and that the decedent died intestate and without heirs. One of appellant's witnesses, Carl Hennies, testified that he had been a carpenter, and, at the time of the transaction narrated by him, was a grain buyer. On October 22, 1915, the decedent, Tjarks, came to the grain elevator of witness in the town of Ravinia. He had with him and produced two blank forms of will, and asked the witness to draft a will. After some conversation, the witness undertook to do so. The decedent produced from his pocket a piece of paper upon which was written the names and addresses of the devisees. Decedent stated that he desired each of them to receive one-fourth of his estate; the beneficiaries being cousins of his deceased wife. The decedent stated that he and witness would take the will to Wagner the next day and have it witnessed by persons whom the decedent named. The witness took the two blank wills, filled them both in, dated them as of the succeeding day, when the will was to be signed, and then decided that he would use the proposed will which he thought the best of the two blanks which he had filled in. The next day witness and Tjarks went to Wagner, and looked for one Coughlin, whom the decedent desired as a witness for the will. Not finding Coughlin, the parties went to the Wagner State Bank, and procured one Evers as a witness. At that bank decedent signed his name, and

the will was executed in a manner required by the statute. The decedent then delivered the executed will to Hennies, who placed the same in his pocket.

The witness Hennies was not in any way related to either the alleged testator or the beneficiaries named in the alleged will. The part of the will written into the blank form is as follows:

"To my wife's cousins, as follows: One-fourth to the children of Peter Plattje, who lives near Avon, S. D., the children's first names I do not remember; one-fourth to Mrs. Lydia Endicotte, who lives in Oregon; one-fourth to Mrs. Mary Nieuwenhuis, who lives near Harrison, S. D.; one-fourth to Mrs. Jennie Munneke, who lives near Joubert, S. D."

The witness Hennies continued to the effect that in January, 1916, Tjarks died, and one Barnard Brandt, a banker of Avon, proceeded to administer the estate. Shortly thereafter Hennies, in preparing to leave the business of grain buyer at Ravinia, was cleaning up some papers which he had around the elevator and in his satchel, and, through inadvertence, he burned what he supposed was a copy of the will that he had originally made, but which, in fact, proved to be the original instrument.

The witness Evers testified for appellant that he was formerly county treasurer of Charles Mix county, and, at the time of the transaction by him narrated, was vice president of the Wagner State Bank. He testified that Tjarks and Hennies came to his bank on October 23, 1915, and witness corroborated Hennies' statements as to the execution of the will, and, like the witness Hennies, this witness also testified to the contents of the alleged lost instrument, claiming to do so from recollection independent of the copy offered in evidence. Each witness identified the alleged copy of the lost will as a true copy. In addition to this proof, the witness Nieuwenhuis, who is the husband of one of the beneficiaries in the alleged lost will, testified to a conversation with the decedent, in which the latter stated that he had made a will "giving the Plattje children" all his property. Other witnesses identified the beneficiaries as the Plattje children.

No part of the above-stated testimony was directly contradicted by any witnesses, nor was any fact proven by respondent which may be said to be a direct contradiction of any part of appellant's proof as aforesaid. For this reason appellant contends

that the trial court was without right or power to arbitrarily disregard the testimony of the witnesses above named; that there is no evidence to sustain the decision which supports the contest of the will; and that the findings are against the undisputed evidence. To support their position appellants refer to a certain general rule stated in Miller's Will, 49 Or. 452, 90 P. 1002, 1006, 124 Am. St. Rep. 1051, 14 Ann. Cas. 277, and in numerous other cases cited by appellants, as follows: "It is firmly established everywhere that, as a general rule, when a disinterested witness, who is in no way discredited by other evidence, testifies to a fact within the knowledge of such witness, which is not in itself improbable, or in conflict with other evidence, the witness is to be believed, and the facts so given are to be taken as legally established."

■ It is not to be denied that the legal duty of the trial court to enter findings in an equity case consistent with the undisputed testimony of a witness is the same as the duty of the court to direct a verdict in a jury case, according to such testimony. A recent statement of the rule by this court was in Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 594, as follows: "If the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct a verdict, and the direction of such verdict should not be prevented merely by reason of the fact that one or more of the witnesses are interested in the transaction or the result of the suit." See, also, Beatty v. Beatty, 151 Ky. 547, 152 S. W. 540; Kennedy v. Modern Woodmen, 243 Ill. 560, 90 N. E. 1084, 28 L. R. A. (N. S.) 181; Anderson v. Liljengren, 50 Minn. 3, 52 N. W. 219; Blankman v. Vallejo, 15 Cal. 639; Allis v. Hall, 76 Conn. 322, 56 A. 637; Kuehne v. Malach, 286 Ill. 120, 121 N. E. 391.

■ Where the only person who could directly dispute a witness is dead, the testimony of that witness should be clearly scrutinized, its reasonable probability should be carefully considered, and, for this purpose, attention should be given to the circumstances surrounding any transaction which the witness may narrate, and his

testimony compared with all inferences derivable from all the established facts. Re Bailey, 111 App. Div. 909, 98 N. Y. S. 725. To accept the testimony of appellants' witnesses as conclusive, we would be obliged to find that the testimony was not improbable, and that none of the proven circumstances of fact tend to discredit or raise substantial doubts as to the verity of the same. In short, we may consider that the testimony offered by appellants is not directly contradicted or denied by any witness of respondent, and yet we would have to consider whether there are any permissible deductions, by way of inference, which may be drawn from any of the evidence to raise a substantial doubt as to the truth of appellants' showing.

In this behalf respondent calls our attention to certain matters brought out in cross-examination of appellants' witnesses. It appears that the witness Hennies never had any experience or training in the drafting of wills, and it is argued that it is improbable that decedent would have gone to such a person for the purpose of having a will drawn. Explaining why he wrote two drafts of the will—by means of which the witness was able to produce an exact copy for probate—he stated that he rewrote the will, so that the second draft would be a little better as a matter of penmanship. Asked as to when he acquired the impression that it was necessary for one making a will to say to the witnesses, "This is my last will and testament," Hennies stated that he did not know; that no one had told him. The witness declared that decedent handed him the will, after its execution, although it was shown that Tjarks had a lock box at the bank, in which he was accustomed to keep personal papers. It thus came about that the witness, intending to destroy the copy of the will, destroyed the alleged original after Tjarks' death. Although Hennies knew that one Brandt had been appointed administrator of Tjarks' estate, and was attending to the same, he made no mention of the lost will for a period of several months, and until counsel had been employed by the proponents of the lost will. The witness Evers also permitted several months to pass, after Tjarks' death, before he claimed to have been a witness to the execution of lost will, and, in conversation with the administrator Brandt, he not only failed to mention the will, but he made statements inconsistent with his alleged knowledge of the particular will offered to probate. The witness Evers also stated that his wife's brother married a sister of the witness Hennies.

A witness for respondent testified to statements made by Evers, which were not consistent with knowledge on his part of the fact of the execution and of the contents of the will above mentioned. Another witness of respondent heard statements by the witness Hennies to the effect that he was to receive a certain property belonging to the Tjarks estate. Other evidence introduced by respondent, or brought out in cross-examination of appellants' witnesses, tended to show the circumstances with respect to the time and manner of employment of counsel, on a contingent basis, to bring about the probate of the alleged lost will, and reference was made to activity in this behalf after much time had passed without any conduct on the part of the witness Hennies or Evers, consistent with their knowledge of the facts to which they testified after the copy of the lost will was offered for probate. Upon these several circumstances of proven fact the trial court made its decision and finding that the alleged will was never made by the decedent.

We cannot say that inferences, necessarily adverse to the credibility of appellants' witnesses, are the only inferences which may be drawn from the above and similar evidence. But, on the other hand, we may not properly substitute our opinion of the credibility of the witnesses or of their statements for that of the trial court, and insist upon other permissible inferences from the same evidence. Since it must be conceded as a matter of law that a reasonable process of intellection might lead to the fact result stated by the trial court, the only question presentable on appeal is whether the trial court's findings are against the clear preponderance of the evidence.

■ Rev. Code 1919, § 3214, provides that no will shall be established as a lost or destroyed will unless its provisions are clearly and distinctly proven by at least two *credible* witnesses, and the courts usually lay down a formula which implies that a greater degree of evidence than a mere preponderance is necessary. 1 Page on Wills (2d Ed.) § 790. The claim of appellants' witnesses that they were able to testify to the exact contents of this will long after its execution, and from independent recollection aside from the alleged copy, was treated by the trial court as questionable, and the unexplained failure of the witnesses to make any move or statement consistent with their knowledge of the will, while the estate was in

process of probate for a period of months, was also persuasive in its decision as to the credibility of appellants' witnesses. In justice to appellants it may be said that most of the circumstances above stated, as well as other matters pointed out by respondent, were explained by appellants' witnesses, and we may assume that any doubts could have been properly resolved in favor of appellants by the trier of the facts. But holding, as we do, that inferences drawn by the trial court, adverse to appellants' claims, are legally permissible or rationally possible, we cannot conclude from this record that appellants' proof is undisputed, nor that the trial court erred as a matter of law in its decision as to the credibility of the witnesses, nor that the findings are against the clear preponderance of the evidence.

■■ Appellants stress the point that two juries have determined the facts favorable to appellants, exactly as two trial judges have refused to follow their advisory verdicts, and have found the alleged will was never made by decedent. But on appeal we are met with a well-recognized rule of evidence that proof of the execution and contents of an alleged lost will must be direct, clear, and convincing, and by the further rule, too common to justify citation, that the trial court's findings of fact are conclusive, unless they are found to be against a clear preponderance of the evidence.

It should be remarked, however, that questions as to burden of proof are not discussed or mentioned in this appeal. Although it is sometimes held that the order admitting an alleged lost will to probate is prima facie evidence of its execution, contents, and of the fact it was not revoked (1 Page on Wills [2d Ed.], § 642), and though this proceeding was initiated by the petition of respondent, the trial below appears to have proceeded with appellants opening the case and offering the testimony of their witnesses in full, while, on appeal, the argument is confined to the sufficiency of the evidence to support the findings.

For reasons stated, the judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.