## DAY v. WILLIAMS et al.

No. 28117. Nov. 1, 1938.

Rehearing Denied Dec. 20, 1938.

Porter H. Morgan and Jack W. Page, for plaintiff in error.

Bruce & Rowan and Hugh M. Bland, for defendants in error.

DAVISON, J. This is an appeal from a judgment of the district court of Oklahoma county sustaining a demurrer to the evidence of the proponent offered on petition to probate a copy of a purported lost holographic will.

The record discloses that R. J. Lee died in Oklahoma county on May 11, 1936; that the deceased was a resident of said county and was seized and possessed of real and personal estate located in said county and state of Oklahoma.

On June 9, 1936, Sophia E. Day, the sister of the deceased, filed her petition for the appointment of herself as administratrix of the estate of the deceased. In the petition it was alleged that R. J. Lee died intestate, and that due search had been made to ascertain if the deceased had left a last

will and testament, but that none had been found. The petitioner was duly appointed administratrix of the estate and assumed her duties and served as such until September 28, 1936, when the county court issued an order removing Sophia E. Day as administratrix of said estate.

On October 7, 1936, Sophia E. Day filed in the same case her petition for the probate of a purported holographic will of the said R. J. Lee, deceased. It was alleged in the petition that R. J. Lee died testate, having made his last will and testament on the 15th day of December, 1934, in which the deceased demised all of his property to the petitioner, Sophia E. Day, and that the will was in her possession at the date of the death of deceased, and that it had since been lost or destroyed by a person or persons other than the petitioner. A copy of the purported will was attached to the petition.

A protest was filed against the probation of the purported will, denying the execution of such a will. The county court denied the probation of the copy of the purported will, and the proponent of the will appealed to the district court. After a hearing of all the evidence presented by the proponent, the court sustained a demurrer of the protestants thereto, and dismissed the appeal and the judgment of the county court was sustained. From that judgment this appeal was taken.

The several contentions of error present to this court the single proposition, that the court erred in sustaining the demurrer of the contestants to the evidence produced by the proponent of the purported will.

As to holographic wills, section 1545, O. S. 1931 (84 Okla. Stat. Ann. sec. 54), provides:

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

As to the requisites of proof of a lost will, section 1118, O. S. 1931 (58 Okla. Stat. Ann. sec. 82), provides:

"No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

In the instant case, there is no contention that the will was fraudulently destroyed in the lifetime of the testator, but it is alleged that the will was in existence at the time of the testator's death and testimony was introduced to prove this assertion.

Section 1555, O. S. 1931 (84 Okla. Stat. Ann. sec. 91), provides:

"A lost or destroyed will of real or personal property, or both, may be established in the cases provided by law."

Section 1100, 'O. S. 1931 (58 Okla. Stat. Ann. sec. 31), provides:

"An holographic will may be proved in the same manner that other private writings are proved."

A holographic will requires no witness and is required to be written entirely in the handwriting of the testator. The law contemplates that the identity of the will and the provisions thereof must be determined from the instrument itself.

E. F. Smith testified, in substance, that he saw the will, but did not read it. He heard R. J. Lee, the maker, read it. The witness was sure that the name of Sophia E. Day was written in the will. He was questioned and answered as follows:

"Q. Did you see her name in there? A. I never read the will, he read the will to me. Q. What I am trying to get at is whether you are testifying from what he read to you or from what you saw on the piece of paper? A. I am testifying from what he read to me and what I did see, but I didn't read all of the will, he was reading it to me. He wrote a funny hand that was hard for me to read."

This witness did not testify that any part of the will was written in his presence. The portion of the contents of the will quoted by the witness was obtained from what Lee, the purported maker of the will, told him was in the will.

Witness James Marshall testified, in substance, that he had never been in Oklahoma until after the death of R. J. Lee; that he lived in Springfield, Ohio; that he did not know Lee and had never seen him. He testified that he roomed at the home of Mrs. Sophia E. Day in Springfield, Ohio, in December of 1934, when Mrs. Day received a letter which she said was from R. J. Lee. The witness saw the letter and an instrument with it, which was claimed to be a will, but he did not know the handwriting. The witness did not read all of the instrument, and did not know the date, and was not sure as to its being written with a pencil. His knowledge was based principally upon what Mrs. Day told him.

Witness Goldie Day testified, in substance,

that she is the daughter of Sophia E. Day and lived in Springfield, Ohio; that her mother left Springfield in December, 1934, and went to Oklahoma; that prior thereto her mother received some correspondence from R. J. Lee in Oklahoma which contained an instrument called a will; that on a separate piece of paper in Lee's handwriting it said: "I am sending you my will." Witness testified that the instrument was in the handwriting of R. J. Lee; that the will was placed with her mother's letters in a press or cupboard; that after Lee died she came to Oklahoma; that James Marshall, at request of witness, sent to her in Oklahoma the bundle of papers and that the piece of paper her mother received in Springfield, claimed to be a will, was in the bundle received; that it was put in a box on a stand near her mother's bedroom in the R. J. Lee home in Oklahoma City; that when witness returned to Springfield the will was where they had placed it. The witness did not say it was the same instrument about which E. F. Smith had testified.

Henry H. Rauton testified, in substance, that he saw the will, and heard Lee read it: that it was written with pencil and signed at the bottom "R. J. Lee"; that he could not identify the handwriting of Lee and would not know it if he saw it; that the will was already prepared when he and Mr. Smith went to the home of Mr. Lee; that he has never seen the will since; that he did not believe he would know it if he should see it; that he did not know whether the will read to him was in Lee's handwriting or not.

Other testimony was introduced relative to what Lee had said he intended to do with his property. Mrs. E. F. Smith's testimony at a former hearing was read into the record wherein she stated, in part, that she had talked to R. J. Lee and that Lee told her he had given his money to his sister. Letters to Mrs. Sophia E. Day were introduced, purporting to be in the handwriting of R. J. Lee, showing desire to have Mrs. Day come to Oklahoma and live with him and his intentions relative to giving her his property.

We think the testimony was sufficient to establish the fact that R. J. Lee had prepared in his own handwriting some instrument purporting to be his will in which his sister Sophia E. Day was the beneficiary. We think the testimony was sufficient to further show that Sophia E. Day received an instrument while in Springfield, from R. J. Lee, purporting to be a will conveying his property to Sophia E. Day and was in existence when R. J. Lee died.

Whether or not the instrument that was exhibited at the home of R. J. Lee and read by him, referred to in the testimony of D. F. Smith and Henry H. Rauton, was the same instrument received by Sophia E. Day in Springfield and referred to in the testimony of Goldie Day and James Marshall is another question and one the testimony fails to answer. Neither do we think the testimony sufficient to show that the purported will, a copy of which is offered for probate, is the same instrument received by Mrs. Sophia E. Day from R. J. Lee, in Springfield, Ohio.

Considering now the provisions of the will, we find that Goldie Day testified that the will read as follows: "Oklahoma City, Oklahoma, December 15, 1934, My will. I, R. J. Lee, do hereby will and give to my sister, Mrs. Sophia E. Day, all of my real and personal property. R. L. Lee." Her testimony further showed it was signed "R. J. Lee". The testimony of Goldie Day further shows that she was requested to write the will just as she remembered it. Contestant's "Exhibit 5" shows that she wrote in the following language and style:

"Oklahoma City Okla Dec. 15 1934 My will

"I R. J. Lee do hereby will & give to my Sister Mrs S. E. Day all my real & personal property

"R. J. Lee."

The testimony of E. F. Smith as to the provisions of the will states:

"It said, I, R. J. Lee, give to you my sister, all of my real and personal property." "I am sure he had his sister's name written in there Sophia E. Day."

Henry H. Rauton was requested to repeat the will, word for word. He stated:

"It was just like he stated. It might not be word for word, but I believe it would be the way I got it. He said, 'I, R. J. Lee, Leave all my property both real and personal to my sister, Mrs. Sophia E. Day'."

The copy of the alleged lost holographic will set out in the petition, asking that same be allowed to be probated as the lost will, alleged to be in substance as follows:

"Oklahoma City, Oklahoma, December 15, 1934,

"I hereby will and give to my sister Sophia E. Day, all of my real estate and personal property which I now possess. Robert J. Lee."

In the probation of a will, even when the will is produced in court, the law is very strict in its requirements of proof. Where the will has been lost, it is even more

strict, and especially so when same is protested. Where a copy of a purported lost holographic will is offered for probate, the execution of the will exclusively in the handwriting of the testator, the existence of the will at the testator's death, and the provisions of the will must all be clearly and distinctly proven by at least two credible witnesses. The court is of the opinion that these requirements have not been fully nor satisfactorily met.

Section 1118, O. S 1931, supra, is the same as that of the states of California, Washington, Colorado, and Nevada, and each of these states has uniformly and consistently required a very strict compliance with the words of this statute.

In Re Calvin's Estate (Wash.) 62 P.2d 461, it was held:

"Statute with reference to proving lost or destroyed will is mandatory and may not be disregarded."

"To establish lost or destroyed will it must be proved that will was in existence at time of testator's death, and its provisions must be clearly and distinctly proved."

"Two witnesses required by statute to prove lost or destroyed will must each be able to testify to provisions of will from his or her own knowledge and not from declarations of another, even of testator himself."

In Barrow v. Vining et al., In re Barrow's Will (Wash.) 212 P. 149, it was held:

"Where a will is not produced, evidence to establish its execution and contents must be clear and convincing.

"The law requires great care and exactness in the proof of a written will even when the instrument itself is preserved and presented, and when the instrument is not presented, the least that can be required is that the evidence to establish its execution and contents must be clear and convincing."

In Re Duffill's Estate. Duffill v. Duffill Estate (Nev.) 61 P.2d 985, it was held:

"Supreme Court would not be justified in reversing judgment refusing to admit alleged lost will to probate and order denying new trial unless it clearly appeared that wrong conclusion was reached.

"Trial court is not bound to accept uncontradicted testimony, but it may consider inherent improbabilities of statements of witnesses"

—and quoted with approval from quotation in Estate of Kidder, 66 Cal. 487, 6 P. 326, as follows:

"To authorize the probate of a lost will by parol proof of its contents depending on the recollection of witness, the evidence must be strong, positive, and free from all doubt. Courts are bound to consider such evidence with great caution and they cannot act upon probabilities. This strictness is requisite, in order that courts may be sure that they are giving effect to the will of the deceased and not making a will for him."

Holdings to the same effect, in whole or in part, may be found in Re Needham's Estate (Wash.) 126 P. 429; Clark v. Turner. 50 Neb. 290, 69 N. W. 843. 38 L. R. A. 433; In re Harris' Estate (Wash.) 39 P. 148; In re Eder's Estate (Colo.) 29 P.2d 631. and from other courts in states of the Pacific division cited therein.

In the demurrer of the contestants to the evidence of the proponent of the will, it was alleged that the evidence wholly failed to establish, by two credible witnesses, (1) the execution of the will; (2) that the will was in existence at or after the death of the testator; and (3) the contents of the will as provided by law It was the contention of the protestants that each of these requirements must be clearly and distinctly proved by at least two credible witnesses. It is the contention of the proponent that it is only the provisions of the will that are required to be proven by two credible witnesses.

There is no provision in section 1118, O. S. 1931, supra, that requires proof by two witnesses of the execution of a lost will or of its existence at the time of the death of testator. Sufficient testimony to convince the court of the fact is all that is required, and the court is in no way bound to accept uncontradicted testimony The requirement of the proof of at least two credible witnesses applies only to the provisions of the lost will. which must be clearly and distinctly proven.

In the demurrer of the contestants to the evidence of the proponents it was further alleged that the evidence as a whole entirely failed to meet the requirements of the law for probation of a lost will. There is nothing in the judgment of the court to indicate what particular feature, if any, of the evidence required was held insufficient. That being true. error cannot be based upon the charge that the court required a greater and higher degree of proof as to the execution of the will and the existence of the will at the time of the death of the testator than is required by law, nor that the demurrer was sustained

on the ground of the failure to prove these two facts by at least two credible witnesses.

The court being convinced that neither of the three requirements of proof has been fully met by the proponents in their efforts to prove a lost holographic will, the judgment of the trial court should be sustained.

"Where a will is not produced, evidence to establish its execution and contents must be clear and convincing." In re Barrow's Will, supra.

The judgment of the trial court is affirmed

OSBORN, C. J., and RILEY, CORN, and GIBSON, JJ., concur.