### In the Matter of the ESTATE OF Charles T. MODDE, Deceased.

### No. 13596.

Supreme Court of South Dakota.

Considered on Briefs May 17, 1982.

Decided Sept. 1, 1982.

James E. McMahon of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellants Al Henle, James P. Henle, Janice Henle Pierce, Annette Menig, Rose Kelsheimer, Pete Modde, Mary Jordan, Mary Henle Moon, and James Modde.

Thomas J. Johnson of Quaintance, Swanson & Johnson, Sioux Falls, for appellee John Modde.

DUNN, Justice (on reassignment).

This is an appeal from the judgment of the circuit court denying Al Henle's (appellant) petition for summary administration and admitting an unsigned copy of a will of Charles T. Modde, decedent, to probate and allowing John L. Modde (appellee) to proceed with his petition for summary administration. We affirm.

Decedent died on September 23, 1978. His heirs-at-law consist of nephews, nieces, grandnephews and grandnieces. There was no signed written will found at the time of decedent's death or at any time since his death.

In 1955, decedent lived in Sioux Falls, South Dakota, as did the majority of his relatives. Decedent made three to four trips a year to Sioux City, Iowa, to visit his brother, Frank Modde, whose son is the appellee in this case. Decedent and appellee frequently hunted and fished together in the decade of the fifties.

In the winter of 1955, decedent informed appellee, who was then sixteen years of age, that he was going to make a will and leave everything he owned to appellee. Appellee testified that thereafter he received a letter from decedent stating he was having his will drawn. This letter could not be found. Soon after, appellee received in the mail a carbon copy of a will, wherein he was named the beneficiary. The copy is in typewritten carbon, except the date and the names of two witnesses, plus their addresses, which appear in original typewriting. The typewriting indicates the original will of decedent, which cannot be located, was executed April 28, 1955, and was witnessed by B. W. Phillips and E. Colleen Gillen. Phillips was an attorney in Sioux Falls and Gillen was his secretary. The line provided for the signature of the testator is blank. It is this carbon copy of the decedent's will which was presented for probate.

Decedent and Attorney Phillips were friends and often visited in Phillips' office in the mid-fifties. Phillips died in 1958. Phillips' part-time secretary, E. Colleen Gillen, worked only when called. Gillen's records show that she did work for two and one-half hours on April 28, 1955, the day the will of decedent was executed.

Although Gillen had no independent recollection of the drafting or execution of the will in question, she did testify that the production of will copies occurred in a particular fashion. The original will would be typed separately. Since the office did not have a photocopy machine, Gillen testified copies were typed using the original as a model with the required number of carbon copies being produced simultaneously. Clients did not sign the copies. After the execution of the will, the date of execution and names of the witnesses would be typed onto the carbon copies. Gillen believed the carbon copy admitted to probate was typed on Phillips' old Underwood typewriter because of certain "style of type" peculiarities ascribable to the typewriter, which appear on the carbon copy.

1. SDCL 30-6-26 provides:
   Whenever any will is lost or destroyed, the circuit court must take proof of the execution and validity thereof, and establish the same,

Gillen worked for Phillips for about two and one-half years. The office files were kept in Phillips' office and Gillen did no filing and had no knowledge of what the files contained. Gillen had no recollection of the will in question. If the will was executed by decedent, Gillen had no knowledge as to where it was kept or whether it was in existence at the time of decedent's death on September 23, 1978.

Decedent was first admitted to the Veteran's Administration Hospital in Sioux Falls in October of 1964. He was in and out of hospitals numerous times thereafter. There were numerous diagnoses made of his medical problems, one of which was described as an alcohol-related problem. In May of 1969, decedent was admitted to the Veteran's Administration Hospital in Fort Meade, South Dakota, where he remained until his death on September 23, 1978. There is nothing in the record to indicate the decedent was not capable of handling his own affairs up to November 7, 1972, when the Veteran's Administration began managing his funds.

■ Decedent's heirs-at-law, appellants, contend that decedent did not validly execute a written will. Appellants urge that due execution of a lost will under SDCL 30–6–26 [1] must be proven by direct, clear and convincing evidence. *In re Tjarks' Estate*, 55 S.D. 636, 227 N.W. 84 (1929). We find appellant's reliance on *In re Tjarks' Estate, supra,* as establishing the burden of proof to be misplaced. The question of burden of proof was not discussed or mentioned by the parties in that case and thus the court's discussion of the standard was mere dicta. Moreover, a plain reading of SDCL 30–6–26 demonstrates that proof of execution and validity of a lost or destroyed will is established as prescribed in regard to proofs of wills in other cases. Thus, proof of execution and validity would be by a

notice to all persons interested being first given, as prescribed in regard to proofs of wills in other cases.

preponderance of the evidence or prima facie proof.

We believe sufficient testimony and circumstantial evidence was presented to convince the trial court of the fact of execution. Decedent told appellee in 1955 of his intention to leave his property to appellee. Appellee later received a letter confirming decedent's intentions. A carbon copy of decedent's will was subsequently forwarded to appellee by the decedent. One of the witnesses to the document, E. Colleen Gillen, who was also the drafting attorney's secretary, testified the type on the copy admitted for probate indicated it was typed on the attorney's typewriter. Although Gillen did not recall typing or witnessing the will, she did work on the date of execution and the memory lapse may be understandable given the twenty-six year time span. Moreover, the method of producing copies of wills demonstrates that appellee's copy could only have been completed and forwarded to him after the will was executed. We do not find the trial court's finding that decedent had validly executed a written will to be clearly erroneous.

Appellant next contends the trial court's finding that the original will of decedent was a lost will in accordance with SDCL 30–6–27[2] was clearly erroneous. In In re McCoy's Estate, 56 S.D. 279, 228 N.W. 376 (1929), this court pointed out "that in the matter of establishing a lost will there is required perhaps a stronger degree of proof than mere preponderance of the evidence." Id., 228 N.W. at 376. We agree with appellee that clear and distinct proof required by SDCL 30–6–27 applies only to proof of the will's provisions and not to proof that it was in existence at the time of the death of the testator or proof that it was fraudulently destroyed in the lifetime of the testator. Referring to an Oklahoma statute identical to SDCL 30–6–27, the high court of that state held that the requirement of proof of at least two credible witnesses applies only to the provisions of the lost will, which must be clearly and distinctly proved. The court concluded that sufficient testimony to convince the court of the fact of execution of the will or of its existence at the time of the testator's death is all that is required. Day v. Williams, 184 Okl. 117, 85 P.2d 306 (1938).

We look first to that part of SDCL 30–6–27 requiring the will be proved to be in existence at the time of the testator's death. The failure to find a will after a careful and exhaustive search raises a presumption that the testator destroyed it with the intent to revoke it. In re Bell's Estate, 13 S.D. 475, 83 N.W. 566 (1900). It is equally clear, however, that such a presumption is rebutted by evidence, circumstantial or otherwise, that after the execution of the will, it was deposited with a custodian and that the testator did not thereafter have it in his possession or have access to it. We believe there was sufficient evidence to convince the court that the will was in existence at the time of the testator's death. Here, decedent and his attorney were close personal friends and visited frequently in the attorney's office. The attorney kept his files in his personal office, did his own filing, and died approximately three years after this will was executed, leaving decedent without control of the will for nearly twenty years before his death. Moreover, nothing in the record indicates it would be out of character for decedent to leave a document of this nature with the deceased attorney for safekeeping.

We also note the appellee conducted a diligent and exhaustive search for the original last will and testament of the decedent. Appellee contacted the deceased attorney's son who referred him to the individual who apparently took over the files of Mr. Phillips upon his death. This individual was interviewed to no avail. The secretary who had worked part-time for Phillips was

2. SDCL 30-6 27 provides:
No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testa-tor, or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses.

contacted and later testified. The possible heirs, both proponents and opponents, were found and testified. There did not appear to be any other viable contacts still alive. We also find the absence of any statement by decedent of any intent or desire to revoke or change the will to be significant. *See In re Estate of Markofske*, 47 Wis.2d 769, 178 N.W.2d 9 (1970).

Finally, we must be cognizant that this court has the duty to give effect to the intention of the testator as revealed by the expressions of his will when read in light of, and with the aid of, the surrounding circumstances. *In re Hoisington's Estate*, 67 S.D. 280, 291 N.W. 921 (1940). Here, decedent made known his intent to make appellee his beneficiary in conversations with appellee, in correspondence with him, and through the transfer of a copy of his last will and testament. No evidence was introduced at trial to convince us that intent was ever revoked or changed during decedent's lifetime. Although a close question, we do not believe the trial court was clearly erroneous in concluding the original will in this case was left with decedent's attorney and was thereafter lost and could not be found.

We next address the portion of SDCL 30–6–27 requiring clear and convincing proof of the will's provisions by at least two credible witnesses. We believe the trial court did not err in concluding the appellee and E. Colleen Gillen were credible witnesses. Appellee's knowledge of the will's provisions came through conversations with decedent, correspondence with decedent, and receipt of a carbon copy of decedent's will. All of these transactions indicated appellee was to be the sole beneficiary of decedent's estate. Although Gillen did not personally recall typing the will in question due to the passage of time, the circumstantial evidence consisting of her employment on the date of execution, her routine typing of documents, her prescribed method of making copies of wills, and her belief the document was typed on Phillips' typewriter, convince us she was a credible witness capable of testifying as to the will's provisions. Further, once Gillen's testimony established that the original typing of the names of witnesses was only done after the will was executed, the carbon copy of the will with the original typing of the witnesses' names on it became strong and convincing evidence of the exact provisions of the executed will.

Appellant next contends the trial court was clearly erroneous in ruling decedent possessed testamentary capacity on April 28, 1955, the date of execution. The burden rests with the proponents of a will to establish that the testator had the required mental capacity to make a will at the time of its execution. *Estate of Podgursky*, 271 N.W.2d 52 (S.D.1978). Although unable to recall the decedent executing the will in question, E. Colleen Gillen did testify that she had never witnessed anyone in the office who had been drinking nor had she seen anyone with "sanity" problems in the office executing wills. Appellant apparently questions the decedent's testamentary capacity because of a drinking problem, which became quite severe in the 1970's. Evidence was introduced at trial, however, in the form of agreed-upon testimony by Phillips' successor, which stated he knew the decedent during the years of approximately 1952 to 1958, and had not observed "any alcohol problem or problems with regard to mental capacity ... during that time span." We believe this evidence supports the trial court's finding that the deceased enjoyed testamentary capacity at the time he executed his will.

We affirm the judgment.

WOLLMAN, C. J., and MORGAN, J., concur.

FOSHEIM, J., and BERNDT, Circuit Judge, dissent.

BERNDT, Circuit Judge, sitting for HENDERSON, J., disqualified.

BERNDT, Circuit Judge (dissenting).

The key issue here is whether the original will of decedent was proved as a lost will, pursuant to SDCL 30–6–27. I would hold that it was not, and respectfully dissent.

In addition to proof of due execution and contents of a lost will, the proponent has

the burden of proving the impossibility of producing the original will and the non-revocation of the will by the testator.

Before evidence of the contents of an allegedly lost will may be admitted, some reasonable explanation must be given for its nonproduction. The reason for its nonproduction may be shown by either direct or circumstantial evidence.... Generally, however, the loss of a will is shown by circumstantial evidence that a diligent search was made for the will in every place that it might logically be expected to be found, and that it was not found in any of these places.

14 Am.Jur. *Proof of Facts* § 3 (1964). As to non-revocation, SDCL 30–6–27 requires that the lost will be proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently destroyed in the lifetime of the testator.

Thus, the burden of proof of nonrevocation is on the proponent of a lost will shown to have been duly executed and in the possession of, or readily accessible to, the testator, or which was not shown to have been in the possession of another at the time of its loss, in order to overcome the rebuttable presumption of revocation which prevails in such instances.

80 Am.Jur.2d *Wills* § 1075 (1975).

The presumption that an instrument offered for probate, which is proved to have been validly executed as a will, continued unrevoked as a validly executed will is not present in a proceeding to establish a lost will, the presumption then being, at least where the will was in the possession of the testator, or accessible to him, that it has been revoked by the testator, the very fact that the will cannot be found being regarded as tending to show that the testator destroyed the will animo revocandi. However, such presumption is not conclusive, but may be overcome by proper and sufficient proof that the testator did not revoke the will.

Annot., 3 A.L.R.2d 951 (1949).

Stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud, and the court should proceed with extreme care in the matter of proving a lost will. 95 C.J.S. *Wills* § 419 (1957). Statutes relating to the proof of lost wills or destroyed wills are mandatory, and may not be disregarded. *Day v. Williams*, 184 Okl. 117, 85 P.2d 306 (1938).

The lower court found that proponent had personally, and through the services of his attorneys, performed a diligent and exhaustive search for the original will. The only evidence as to search was by the proponent, John Modde, who testified that he looked for the original will by talking to Attorney Phillips' son and to a Roger Schiager, neither of whom had any information. The only other action proponent took was to hire an attorney. The record is devoid of evidence of a further search, by either proponent or his attorney. To approach what could even be considered a diligent search would surely require a search of the records of the clerk of courts and an attempt to determine what happened to the files of Attorney Phillips after his death, not to mention an effort to determine what happened to the personal effects of decedent. I would hold this finding to be clearly erroneous.

The proffered copy is not a carbon copy of the original will. It is purported to be a carbon copy of a typed copy, which does not even have the name of the testator typed on the line reserved for his signature. That line is blank on the proffered copy.

The lower court also found as follows:

That the original Last Will and Testament of Charles T. Modde was left with the Decedent's attorney, B. W. Phillips, and thereafter was lost and cannot be found, but was in existence at the death of the Decedent on September 23, 1978. That the Will was not thereafter returned to the Decedent nor was the Will readily accessible to the Decedent.

There is no evidence whatever to establish what happened to the original will, or that it was in existence at the time of death. We are, left with inferences only. "[W]hile a court is at liberty to draw all the

inferences which logically and naturally follow from proven facts, it cannot infer facts not proven." *In re Taylor's Estate*, 39 S.D. 608, 613, 165 N.W. 1079, 1080 (1917). The record shows that decedent managed his own affairs for some ten years after the death of Attorney Phillips. Even if Phillips were presumed to have kept the original will, it was readily available to decedent, as he often visited at Phillips' office, and he had ample opportunity to have a new will drafted if the original became unavailable after Phillips' death in February 1958. This finding is clearly erroneous.

Although I concur in the majority holding that decedent had validly executed a written will, circumstances surrounding execution of this will were lax, at best. Secretary Gillen's direct testimony was that she would be called into Phillips' office to witness the signing of a document. She went on to testify: "I can't even say it was a will at the time...." This hardly complies with SDCL 29–2–6 relating to the requirements of subscription, acknowledgment, and attestation.

I am authorized to state that Justice FOSHEIM joins in this dissent.