In re PAULL'S ESTATE.

No. 33448.   Jan. 17, 1950.

Rehearing Denied March 17, 1953.

*254 P. 2d 357.*

Person E. Woodall, Norman, for plaintiffs in error.

Mike Foster and Clay M. Roper, Oklahoma City, and Joe A. Smalley, Norman, for defendants in error.

HALLEY, J.   The district court of Cleveland county denied an application to probate a purported holographic will of Alice M. Paull, deceased.   It had been offered for probate by W. H. Burgess, the named executor under the purported will, and Lorna M. Burgess, his wife and the chief beneficiary thereunder. The instrument had been denied probate in the county court, and they had appealed to the district court, and from the district court's action the Burgesses have appealed here. Claude R. Paull and other heirs of Alice M. Paull, deceased, had contested the application to probate, and will be referred to as protestants, and the plaintiffs in error will be referred to as proponents.

Alice M. Paull died in Cleveland county, Okla., on April 24, 1942, leaving real estate in Cleveland and Oklahoma counties and some personal property. She was an elderly single woman and had made her home for many years with her sister, Ida B. Earlywine. Her niece, Lorna M. Burgess, and husband, W. H. Burgess, lived nearby and on the farm owned jointly by Alice M. Paull and Ida B. Earlywine.

After the death of Alice M. Paull in 1942, proponents sought to probate an alleged lost will executed in 1912, but were unsuccessful.   Ida B. Earlywine undertook by suit in the district court to enforce alleged mutual wills of Alice M. Paull and her brother, Charles E. Paull, whereby the property involved in the present action would go to Ida B. Earlywine. Protestants intervened and sought to establish title to the property upon promises of Alice M. Paull that it would be theirs at her death. This petition in intervention was later dismissed. These matters are facts and circumstances to be considered in connection with the present claim of proponents in regard to the instrument now offered for probate as the last will of Alice M. Paull, deceased. The instrument now offered for probate as a holographic will was in the possession of proponents during the time they were attempting to

establish title to the land in question on other grounds.

The present action was commenced by W. H. Burgess on July 9, 1945. It is alleged that Alice M. Paull left a holographic will dated February 1, 1934. The protestants alleged that she died intestate, and prayed for letters of administration.

The instrument offered for probate consists of two pieces or sheets of paper, the first being a complete sheet on which appears at the top center of the page the word "WILL", in the handwriting of the decedent. There appears the ordinary first paragraph of a will, followed by four numbered paragraphs in the usual form. The first paragraph appoints W. H. Burgess executor; the second directs the payment of debts and funeral expenses; the third gives to Lorna M. Burgess the land in Cleveland county; and the fourth gives two lots in Oklahoma City to Ida B. Earlywine. This first sheet is not dated or signed, and the written portion covers about two-thirds of the page, the lower one-third being left blank. It is written in ink and the evidence shows that it is all in the handwriting of the decedent. The top center bears the imprint of a rusty, round-like paper clip, but no stain appears on the back of the page. The second sheet of paper consists of what appears to be the lower one-third or one-fourth of a sheet, the sides and lower edge being smooth, but the top being ragged as if torn from a complete sheet. It is a different quality of paper than the first page, and is written with a lead pencil. It is in the handwriting of Alice M. Paull, but appears to differ slightly from the writing on the first page. It bears no imprint of a paper clip. It makes no bequests, but in three lines states that her remaining interests are held pending settlement of the estate of her brother, J. W. Paull. Preceding her signature is the word "Signed". Neither page is numbered, and neither makes any reference to the other. At the lower left corner of the first page and at the top left corner of the second are some pin holes, indicating that the second page had been pinned to the first. Lorna M. Burgess, the only living person who saw these papers when they were found, testified that they were pinned together after they were found in the effects of the deceased.

The above described two pieces of paper were found by Ida B. Earlywine in the desk used by Alice M. Paull, in the room occupied by her up to the time of her death. Lorna M. Burgess was with Mrs. Earlywine when the papers were found, shortly after Alice M. Paull was buried. The two pieces of paper were found folded in a manuscript cover for legal documents, bearing the name and address of Ben F. Williams, Jr., Norman, Oklahoma, on the outside. This cover shows clearly that it had been used for another sheet of paper, which had been torn out, leaving two small fragments around the brads at the top to fasten the paper inside the cover. "Alice M. Paull—Will" was written on the outside of the cover, but not in the handwriting of Miss Paull. The cover and contents were enclosed in a white envelope bearing the single word "Will", and the sealing flap bore a Boulder Dam postage stamp, shown to have been distributed first in 1935. This white envelope was enclosed in a manila envelope which was not sealed, bearing the name "Alice M. Paull", but not in her handwriting. It was admitted that the manuscript cover inside of which the two pieces of paper offered as a will were folded was probably that used by the attorney who prepared a will for the deceased in 1912.

One witness, who was 79 years of age, testified that about 1937 she visited Alice M. Paull, who told her that she had her will made just as she wanted it, and had given her farm to Lorna M. Burgess, pointing toward an upstairs room then used by her, as if to indicate that the will was in her room. The daughter and son-in-law of Lorna M. Burgess testified that they took Alice M. Paull on a trip to Texas, and that she stated that proponents

would get her farm—that Lorna and "Dutch" (W. H. Burgess) had been good to her.

A diary in the handwriting of the deceased and the testimony of some witnesses indicate that Alice M. Paull was probably visiting in Texas on February 1, 1934, when the last sheet of the instrument offered is dated and signed. The testimony on this point is not definite. There is no definite evidence as to when the first page was written. The trial court denied probate, and proponents have submitted two propositions, as follows:

"(1) The instrument offered for probate was the valid holographic will of Alice M. Paull, deceased.

"(2) That there is not any evidence upon which the court could base his findings of fact and conclusions of law, as appear in his order denying said will to probate."

The right to dispose of one's property by will being purely statutory, the courts generally have adhered strictly to the statutory provisions relative to the execution, interpretation, and probate of wills. This is especially true with respect to holographic wills. Section 54 of Title 84, O. S. 1941, provides the three essentials of a valid holographic will: It must be written, dated, and signed entirely in the handwriting of the testator. It has been held that the omission of either one of these essential elements renders the will invalid. The evidence before us shows that the two pages offered by proponents as a holographic will would meet these three requirements if they may be properly classed as a single instrument, and were intended to be so classed by the deceased. It is provided by section 154, Title 84, O.S. 1941, that "several testamentary instruments executed by the same testator are to be taken and construed together as one instrument." This section, however, deals with the interpretation of wills. While the two sheets offered for probate as a single instrument are clearly in the handwriting of the de-

ceased, it is equally clear that they must have been written at different times, and that something preceded the three lines on the second sheet, which is mutilated by being torn. The second sheet standing alone is not testamentary in character, as it devises nothing and merely suggests that deceased's remaining interests are held pending settlement of her brother's estate. The first sheet makes certain definite bequests, but is neither dated nor signed. In Craig et al. v. McVey, 200 Okla. 434, 195 P. 2d 753, this court quoted with approval certain rules set out in the annotation in 54 A.L.R. 917-939, in sec. 922 of which it is said:

"If the alleged testamentary statement refers to something which deceased intended to do in the future, as opposed to something then being done by him, the statement is not a testamentary disposition."

The statement of deceased on the second page offered is more consistent with the thought of a future intention than a present intention as to disposing of her property by will. It carries with it the thought that when her brother's estate is settled, she will make some disposition of it, but that for the present it is being held. Section 101, Title 84, O.S. 1941, provides that a will may be revoked by being torn, burnt, cancelled, obliterated or destroyed with intent and for the purpose of revoking it. The second sheet offered is torn from something which preceded it, but there is no evidence as to who tore it or what the intention of the deceased was, if she had herself torn it from the full page. There is plenty of room on the first sheet for everything that appears on the second. While a holographic will may cover more than one sheet of paper and need not be written at the same time or mechanically fastened together, if the pages are written at different times and neither standing alone meets the essential requirements of a holographic will, it must be apparent either by certain reference of one to the other, or by evidence, that the deceased intended that the several

sheets of paper should constitute one single instrument and that it be effective as his last will and testament.

Alice M. Paull had served as executrix of the will of one brother, and as administratrix in the estate of another brother. It is certain that she had an attorney prepare a will for her in 1912. She must have had some knowledge of wills.

In Elrod v. Purdin, 196 Okla. 120, 163 P. 2d 209, this court denied the probate of four separate sheets of paper as a holographic will. The first sheet was mutilated in that it had been torn across the bottom and appeared to be incomplete. The instruments were written at different times, but were in the handwriting of the deceased, and at least one sheet bore a date and her signature. The rule is announced in the syllabus of the court as follows:

"Where an instrument is tendered for probate as a holographic will, it must be plainly apparent that it was the intention of the deceased that the paper should stand for her last will and testament, and an instrument should be denied probate unless such intention is plainly apparent."

The second sheet of the instrument here offered is torn across the top and appears to be incomplete. The manuscript cover in which both sheets were found is clearly shown to have had a sheet torn out of it, and the writing on the cover is not that of the deceased. The two sheets are on different brands or kinds of paper, and are written with different instruments. The first appears to be the beginning of a will, but it is incomplete in that it is neither dated nor signed, and makes no disposition of anything other than the land. There is not the slightest reference in either page to the other, and they are not numbered. California has a statute similar to that of Oklahoma with respect to the essentials of holographic wills, and in the matter of In re Anthony's Estate, 21 Cal. A. 157, 131 P. 96, it is stated in the second syllabus:

"Where a decedent, just prior to his death, wrote a letter relative to the disposition of his property, which was not dated and hence was not sufficient as an holographic will, it and another letter properly dated could not be taken together as constituting decedent's will unless the second letter was testamentary in character and so referred to the first letter as to incorporate it therein."

In the third syllabus it is announced, relative to the rule of law that favors testacy as against intestacy, as follows:

"The rule of law that favors testacy as against intestacy only applies where the existence of the testamentary intent is ascertained and the subject matter of the doubt is one of construction, and when there is a doubt as to the existence of the testamentary intent the rule does not apply."

In Craig v. McVey, supra, the rule is announced in the first syllabus as follows:

"Where an instrument is tendered for probate as an holographic will, it must be plainly apparent that it was the intention of the deceased that the paper should stand for her last will and testament, and an instrument should be denied probate unless such intention is plainly apparent."

See In re Young's Estate, 95 Okla. 205, 219 P. 100.

In determining whether or not an instrument offered for probate constitutes a holographic will, the court will consider all of the facts and circumstances surrounding its execution in order to arrive at the true intent of the testator. In Day v. Williams et al., 184 Okla. 117, 85 P. 2d 306, it was stated in the first syllabus that:

"The identity of a holographic will and the provisions thereof must be determined from the instrument itself."

The first sheet offered is testamentary in character. When the deceased wrote it, she clearly intended to write her will. For some unknown reason she failed to complete it with the date and

her signature. This left it lacking in two essential elements of a holographic will. The second sheet contains these essential elements, but is not testamentary in character and is clearly torn from a different sheet of paper from that on which the bequests were made.

The proponents insist that the findings and judgment of the trial court are not supported by the evidence. We have considered all of the evidence and are unable to agree with this contention. The fact that proponents of the purported holographic will had it in their possession from April of 1942, until July of 1945, without making any effort to have it established as a holographic will, and in the meantime had undertaken to probate other wills and to obtain title to the land involved upon other grounds, indicates that they must have doubted its validity, and casts a cloud upon their present claims. This court announced in Re Creger's Estate, 135 Okla. 77, 274 P. 30, that:

" 'Proceedings to admit a will to probate are in the nature of an equitable action, and on appeal this court will weigh the evidence." Youngblood v. Rector et al., 126 Okla. 210, 259 P. 579.'"

In Lewis et al. v. Wolfe et al. (In re Lewis' Estate), 200 Okla. 352, 194 P. 2d 174, the rule is stated in the first syllabus as follows:

"This court will not, on an appeal from the district court in a trial de novo from the county court in a probate matter, disturb the findings and judgment of the trial court on review, unless such findings and judgment are clearly against the weight of the evidence."

The findings and judgment of the trial court are not against the clear weight of the evidence, and are hereby affirmed.

DAVISON, C.J., and WELCH, CORN, GIBSON, and JOHNSON, JJ., concur.